## TREASURER OF MOBILE v. HUGGINS.

1. The Judge of the County Court has no power to adjudicate upon the tax list, and ascertain the amount of insolvencies for which the tax collector is entitled to a credit, except at the time provided by law, viz: the second Monday in September of the current year, or at the succeeding County Court, if the special Court is not held.

2. Upon the failure of the County Judge to act, the power conferred upon the Comptroller to make the allowance, may be exercised by the Commissioners' Court, upon the County tax collected during the period, when State taxation was abolished.

Appeal from the County Court of Mobile.

Motion by H. Stickney, treasurer of Mobile county, against the defendant in error, sheriff, assessor, and collector of taxes for the year 1842, for five thousand three hundred and five dollars and twenty-eight cents, balance due by him for taxes collected

that year. The Court rendered judgment against him for two thousand one hundred and thirty-four dollars and thirty-three cents, from which the treasurer appealed to this Court.

From a bill of exceptions taken in the cause, it appears that the sheriff claimed allowances for insolvencies for the year 1842, and also for the year 1841, during which year he had also been the assessor and tax collector. The treasurer insisted that he was not entitled to the allowances claimed for either year, upon the ground that they had not been passed upon, within the time, and in the manner provided by law ; and that for the year 1841 the taxes had been fully settled, and a receipt in full for that purpose passed to him. He further insisted, that an allowance had been made to him by the Commissioners' Court, and that a further allowance could not now be made. Appended to the record is the proceedings of the Commissioners' Court, on the 22d May, 1844, by which the treasurer was directed, on the payment by Huggins of four thousand dollars, to execute receipts in full to him for the taxes for the years 1841 and 1842.

This motion was made on the 25th November, 1844, and continued until the 21st January, 1845. The County Judge considering, that the action of the Commissioners' Court was not final —that the time had not elapsed within which allowances could be made, and that the acceptance of a receipt from the treasurer for the year 1841, did not preclude the sheriff from going into the enquiry, permitted testimony to be introduced, showing the insolvencies for the years 1841 and 1842, and allowed them, and rendered a judgment for the residue.

These matters are now assigned as error.

PHILLIPS, for plaintiff in error contended, that the County Judge had no authority to sit under the statute. That as to this matter his Court was one of special and limited jurisdiction, and the authority to act should be shewn upon the record. [2 Stew. 334 ; 19 John. 7 ; 1 John. C. 20 ; Hill & Cow. Notes, 906.]— He further contended, that there was no authority whatever for ripping up the settlement made in 1841, and referred to the several statutes. [Clay's Dig. 570, § 68, 69, 70, 244, § 11, 245, § 16, 19.]

CAMPBELL, contra, insisted, that there was no pretext for saying the allowance was not just, and the only question was, whether the Court had jurisdiction, and relied upon the statute on the subject.

ORMOND, J.—The only question presented upon the record, is, whether the Judge of the County Court of Mobile had jurisdiction to pass upon the insolvencies, alleged to exist by the tax collector in Mobile county.

By the general law, as it has existed in this State for many years, a particular tribunal was created, for the ascertainment of the amount of insolvents, included in the general list, showing the gross amount of taxes, for which the tax collector stands charged. This tribunal, was a Court required to be held by the Judge of the County Court of each county, on the 2d Monday of September of each year, when an examination of the amount of insolvencies was to be made, ascertained, and certified to the Comptroller. [Clay's Dig. 570, § 68,]

When, from any cause, this Court was not held, the Comptroller was himself authorized to make the proper allowance; [Ib. § 69,] and by another section it was provided, that when the special Court, above spoken of, was, from any cause, not held, the duty of making such allowance was devolved on the next County Court, [Ib. § 70.]

As it respects taxes for county purposes, the general law authorized the several County Courts to levy taxes on the subjects of State taxation, under the same regulations and restrictions, as were provided for the State tax. Thus the law stood until the 9th January, 1836, when an act was passed abolishing State taxation, and authorizing the Commissioners' Courts of the respective counties, to impose taxes for county purposes. On the 13th of February, 1843, an act was passed, again reviving State taxation, and authorizing the Commissioners' Courts to levy taxes for county purposes, not exceeding thirty per cent. on the amount of the State tax.

From this examination of the statutes, it appears, that the Comptroller of the State had no power to act upon the subject in controversy here, and that no tribunal, but that of the special County Court, and the succeeding County Court, if the first was not held, existed for the ascertainment of insolvencies. The pow-

er conferred on the Comptroller, of making such allowances, when the County Judge had failed to act, evidently relates to the general State tax; but his allowance in reference to the State tax, would also operate on the county tax, as the subjects of taxation were the same; the county tax being a *per centum* on the amount assessed as a State tax. During the existence therefore of State taxation, an ultimate tribunal was appointed for the settlement of such questions, but when State taxation ceased, and by necessary consequence, the power of the State Comptroller was at an end, no substitute was provided by law in regard to the county tax, unless the Commissioners' Court, the financial organ of the county, can, under the previously existing law, be considered sufficient for that purpose. Such, in our opinion, is the correct construction of the law.

This Court, by the act creating it, is invested with ample powers for the settlement of such questions. It is declared, that "they shall have control over the funds in the county treasury," which would seem to be an explicit grant of the power in question. [Clay's Dig. 149, § 3.] As the act abolishing State taxation, created no tribunal for the adjustment of this matter, other than the County Court, which had power to sit only at certain prescribed times, and could not legally sit at any other time, we think the Commissioners' Court, having the control and management of the county funds, had the power, upon the failure of the County Court to act, to make the necessary allowance.

It is, we think, very clear, that the Judge of the County Court has no power to make such allowances, but at the times and in the mode pointed out by the statute. The power conferred, does not appertain to the office of Judge of the County Court, either as a Common Law Judge, or as Judge of the Orphans' Court. It is a special grant of power, which upon well established principles, can only be exercised upon the terms on which it is conferred. This is also clear from a consideration of the subject to be acted on, and the evident design in conferring the power The revenue of each year, is wanted for the expenses of that year, and all the machinery was provided, with a view to ensure its prompt collection. The intention was, that the revenue should be collected during the year, to meet the current expenses of the government, and that the accounts of the tax collector should be closed during the year. It would be most mischiev-

ous in its consequences, if the tax collectors could, by their own act, diminish the revenue, by claims for insolvencies of preceding years. To prevent such a state of things, especial care has been taken, by the appointment of a special tribunal, to sit before the close of the fiscal year, and if from any cause, it fails to sit, the necessary deduction may be made by the Comptroller when the taxes are paid in; and if not paid, suit is promptly to be instituted. All these provisions are hostile to the idea, that the time of holding the special County Court is directory merely. It is of the very essence of the power granted, whether considered according to its letter, or to its spirit and design.

These remarks apply equally to the county, as to the State tax. The reason is the same, and the law has made no distinction between them.

The taxes here involved, were collected in 1841 and 1842. It does not appear that in either year, at either the special, or general County Court, any application was made for an allowance of insolvencies, and most certainly the County Judge had no power afterwards to adjudicate them. We have already stated, that the Commissioners' Court had the power to make the proper allowance, although the power of the County Judge, by lapse of time, was gone; and in this case it appears the Commissioners' Court has acted on the subject, and recommended a reduction of thirteen hundred dollars. This was certainly obligatory upon the county, and for that sum the defendant is entitled to a credit.

Let the judgment be reversed, and the cause remanded for further proceedings.