# State, *ex rel.* Weaver, *v.* Brewer, Auditor.

## Application for Mandamus.

1. *Auditor; power of, to re-state accounts settled by his predecessor.* The Auditor in settling a public official's account for one year, has no authority to re-state an account settled and certified by his predecessor in a former year, embracing in the last account items which should have been included in the former, and then by certifying such re-stated account, make it presumptive or *prima facie* evidence of its correctness; as to the items thus brought forward, the Auditor's certificate furnishes no evidence of their correctness.

2. *Same.*—The failure of the Auditor, in settling with a public official, to include items with which he was justly chargeable, will not debar the State from an appropriate action against the officer; but the error must be shown, as in other cases of mistakes in accounting; it can not be proved or shown *prima facie*, by a re-statement by a succeeding Auditor.

3. *Mandamus; when will not lie to correct re-statement.*—Where it is not averred that the Auditor has certified, or will attempt to certify, as correct, items brought forward from the settlement had in a former fiscal year with his predecessor, or that suit has been brought or threatened to be brought,

[State, ex rel. Weaver, v. Brewer, Auditor.]

such alteration of the account works no harm to the officer; and having an ample remedy in defense of suit, if brought, he is not entitled to *mandamus* to compel the Auditor to strike out such disputed items.

APPEAL from City Court of Montgomery.

Tried before Hon. JOHN A. MINNIS.

Appellant was tax-collector of Chambers county for the fiscal year 1875, ending September 30th, 1876, and his accounts for that year were audited, examined, and passed by R. T. Smith, the then Auditor. On this settlement it was ascertained that nothing was due the State. Willis Brewer succeeded Smith as Auditor, and in stating Weaver's account for the next fiscal year, reexamined the account for the fiscal year 1875, and determining that three certain items of debit against Weaver had been omitted in the account of 1875, he embraced them in the account of the next year, whereby that account was increased by the sum of $1,629.43. Weaver avers that he made a full, fair and just accounting with Smith, and that he owes the State nothing on the settlement for the fiscal year 1875, and that Brewer's action was unwarranted and injurious. He, therefore, prayed for *mandamus* to compel Brewer to strike out of the account, stated for the fiscal year ending September 30th, 1876, three items mentioned.

Brewer moved to quash the writ and dismiss the proceedings, on the following grounds: *First,* "because the court has no jurisdiction of the subject-matter of the petition; *second,* because it is not shown that petitioner has a clear, specific, legal right to be enforced by *mandamus; third,* the averments of the petition show no right to relief."

The court granted the motion and dismissed the petition, to which ruling petitioner excepted. This ruling is now assigned as error.

GEORGE F. MOORE, and C. J. WATSON, for appellant. Whether Smith acted as an executive officer, or exercised judicial power in settling Weaver's account, the power to re-examine and re-open it, so as to furnish a basis for summary proceedings for its collection, was exhausted after once being exercised; and neither Smith nor his successor, had further power over the matter.—15 Peters, 389; 7 Peters, 1; 6 Bingham, 85; *Ex parte Randolph,* 2 Brokenboroughs, 473; *Hobson v. Commonwealth,* 1 Duval, 176; *Arthur v. Adams,* 49 Miss. 400; *Ross v. Lane,* 3 S. & M. 665; 61 Pa. State, 290. In *Supervisors v. Briggs,* 2 Denio, BRONSON, J., said it is a "monstrous proposition," that one accounting officer

can unsettle everything which his predecessor had settled. There would be no security for officials, and no end to litigation, if an over-zealous Auditor had power to re-open and re-state the accounts settled by his predecessors for years past.

2. Appellant has no other adequate and specific remedy than *mandamus*. A re-statement of an account, which if allowed to stand, makes a public officer who has fully accounted, a defaulter, is a grievous wrong. Is there no power to correct it, before suit is brought on it? It may be that the petitioner could defeat the suit when brought on the re-stated account, on the ground that there was no power to re-state it. The right of defense is not an adequate remedy. The official bond of appellant gives a lien on his property and that of his sureties. He can not sell his property with this lien resting on it.—*Commissioner's Court v. Moore*, 53 Ala. 25; 43 Ala. 321; *Lawrence v. Supervisors*, 18 Hun, 308; 6 Texas, 457; *Ex parte Trapnall*, 1 English, 9; 6 Ohio State, 325; High, Extraordinary Legal Remedies, § 17; 9 Heiskell, 699.

JOHN W. A. SANFORD, *contra.*—1. The writ of *mandamus* will be granted only when there is a specific legal right, and no other specific legal remedy.—2 Brick. Dig. 240, § 4.

The Auditor is an officer whose duties relative to the public revenue are prescribed by the Code.—§ 85 *et seq.* Although an executive officer, his duties require much care and discretion. How tax-collectors shall be charged, or how they shall settle their accounts, is not a matter of caprice; nor is it a mere mechanical operation. As this is recognized, the courts will not interfere to control his discretion.—*Bell v. People*, 4 California; 2 Otto, 541.

STONE, J.—J. G. Weaver, tax-collector of Chambers county, settled and closed his account as tax-collector, for the fiscal year 1875, with Robert T. Smith, former Auditor, and received his discharge. Smith went out of office, and Willis Brewer, present Auditor, succeeded him. In making up the account of said tax-collector for the fiscal year 1876, Brewer reexamined the account for 1875, came to the conclusion that certain items of debit, properly chargeable to Weaver, had been omitted from the account of 1875, and he thereupon embraced those items of charge in the account of the tax-collector for the fiscal year 1876—thus increasing the latter account by the sum of $1629.43. Such are the aver-

ments of the petition or relation in this case. The present record raises the question, had the succeeding Auditor authority to re-state and correct the account and settlement made by his predecessor? "It is the duty of the Auditor . . . to audit and adjust the accounts of all public officers, keeping a regular account with every person in each county in the State who is by law authorized to collect and receive any part of the State revenue, in suitable books, in which he must charge such persons with all sums of money due from them severally, and credit each with all moneys paid by him to the Treasurer, having first certified to that officer the amount or balance due."—Code of 1876, § 85, subd. 6. The tax-collector is a public officer, and the plain import of the language copied above is, that on the Auditor is cast the duty of stating and certifying the accounts, by which such collecting officer is, *prima facie*, required to settle; because the account, so stated and certified, is *prima facie* correct. . . . "Transcripts from the books and proceedings required to be kept by any sworn officer of the State, are presumptive evidence in any civil cause, and have the same effect as if the original were produced and proved, upon the certificate of the custodian thereof that it is a true copy of the original."—Code of 1876, § 3047. Taken in the connection in which the word *presumptive* is used above, we think it is the equivalent of *prima facie*. Such certified transcript from the books of a sworn officer of the State establishes its correctness, until overcome by countervailing testimony. The Auditor is a sworn officer of the State, and transcripts from books which the law requires him to keep, certified by him, fall within the statute.—*Timberlake v. Brewer*, 59 Ala. 108.

The office of Auditor, though filled by successive incumbents, is a continuous thing. Each of the several incumbents has the same powers, and only the same powers. Neither is clothed with revisory powers over the other. When an Auditor states and certifies an account against a tax-collector, it becomes, *prima facie*, a correct account. A re-statement by a subsequent Auditor can only be *prima facie* correct. Which *prima facie*, or presumptive proof shall overcome the other? The law has not declared that the later stated account shall prevail over the former. The law has said nothing on the subject. Is it implied in the nature of the duty? Many reasons, in addition to those stated above, combine to force us to the conclusion that the Auditor had no power to correct errors he may detect in the accounts stated, certified

and collected by any of his predecessors, and thus make such re-stated account a *prima facie* charge against the officer. We state but one, which we consider conclusive. If the Auditor can re-state one account, he can overhaul any number; and, as the statute of limitations against the State is twenty years, he can extend his investigations back that number of years. Such a rule would be so harrassing, that we can not believe the legislature intended to establish it.

What we have said has been drawn from our own construction of the statutes, and the nature of the duty cast upon the Auditor. Our conclusions are supported by ample authority. In *Ex parte Randolph,* 2 Brock, 447, Randolph was a lieutenant in the navy of the United States, and had officiated as acting purser of a national ship on the Mediterranean. On his return to the United States, he had settled his account at the proper department in 1828. In 1833 the then Fourth Auditor opened and re-stated his account, on the ground that it had been erroneously stated and settled in the first instance, and the account as re-stated exhibited a large balance due from Randolph to the United States. To enforce the collection of this certified balance, Auditor's warrant was issued—process which was authorized by law— and Randolph was arrested thereunder. He applied for enlargement on *habeas corpus.* The court ruled that the account of the petitioner, having been once stated and settled at the treasury department, the law invests the Auditor with no power to open and re-settle it. Randolph was discharged from custody. The court ruled, however, that their construction only relieved Randolph from amenability to the summary, statutory process of distress, and did not prevent a recovery against him in proper legal proceedings, if he had not, in fact, duly accounted for the money which had come to his hands. In the case of *U. S. v. Bank of Metropolis,* the claim against the bank was for deposits made therein by the Postmaster-General. The bank asserted certain claims against the postoffice department, which were audited and allowed, and the claim against the bank was thus neutralized and set off. After the then Postmaster-General went out of office, his successor re-stated the account, disallowing the bank's credits which had been allowed by his predecessor, and thus showed a large balance against the bank. Upon this balance suit was brought, and the question arose on the authority of the succeeding Postmaster-General to reexamine and re-state the account against the bank. In the opinion of the court is the following language: "The third

instruction asked the court to say, among other things, if the credits given by Mr. Barry, were for extra allowances which the said Postmaster-General was not legally authorized to allow, then it was the duty of the present Postmaster-General to disallow such items of credit. The successor of Mr. Barry had the same power, and no more, than his predecessor, and the power of the former did not extend to the recall of credits or allowances made by Mr. Barry, if he acted within the scope of official authority given by law to the head of the department. This right in an incumbent of reviewing a predecessor's decisions, extends to mistakes in matters of fact arising from errors in calculation, and to cases of rejected claims, in which material testimony is afterwards discovered and produced. But if a credit has been given, or an allowance made, as these were, by the head of a department, and it is alleged to be an illegal allowance, the judicial tribunals of the country must be resorted to, to construe the law under which the allowance was made, and to settle the rights between the United States and the party to whom the credit was given. It is no longer a case between the correctness of one officer's judgment and that of his successor. . . . No statute is necessary to authorize the United States to sue in such a case. The right to sue is independent of statute, and it may be done by the direction of the incumbent of the department."—15 Pet. 377.

In the case of *Board of Supervisors v. Ellis*, 50 N. Y. 620, a question arose as to the power of a succeeding board to review and re-adjudge the action of their predecessors. The court said, " Doubtless, if a board of supervisors at one time acts finally upon a matter of which they have jurisdiction, and as to which they have lawful right to act, a succeeding board may not undo what they have done, to the immediate detriment of third parties."—See, also, *Board of Supervisors v. Briggs*, 2 Denio, 26.

In the case of *Hobson v. Com.*, 1 Duvall, 172, an attempt was made by a succeeding Auditor to correct an alleged mistake of his predecessor, in settling with the sheriff, who was tax-collector, for revenue collected by him. Speaking of the acts of the Auditor, as affecting the State, the court said : " He was her accredited organ, with full power and discretion to settle, and record as settled accounts of sheriffs for revenue due to her. . . . His adjustment once closed and registered by him, was made conclusive, unless changed by a direct judicial proceeding for the purpose of correcting any error or mistake committed by him. . . .

The Auditor himself was *functus officio*, and could not change the registered account by his own act. . . . And, of course, his successor could make no correction, and especially after two years, within which period even a suit for correction is expressly limited by law."—See, also, *County of Yallabusha v. Carboy*, 3 Sm. & Mar. 529; *Arthur v. Adam & Speed*, 49 Miss. 404; *U. S. v. Jones*, 8 Pet. 375; *Porter v. School Directors*, 18 Penn. St. 144; *Township of Middleton v. Miles*, 61 Penn. State, 290; *Burnett v. Auditor*, 12 Ohio, 54; *Kendall v. U. S.* 12 Pet. 524; *Treasurer of Mobile v. Huggins*, 8 Ala. 440. We hold that the Auditor had no authority to re-state the tax-collector's account, charging him with items which his predecessor should have embraced in the settled account of a previous year, and by certifying such re-stated account, make it presumptive, or *prima facie* evidence of its correctness. We do not decide that if Weaver, the tax-collector, failed to account for and pay moneys of the fiscal year of 1875, belonging to the State, with which he should have been charged, he may not be made to account for such moneys in an action at law. All we decide is, that, as to the items belonging to the fiscal year 1875, and brought into the corrected account of the fiscal year 1876, the Auditor's certificate or transcript certified, furnishes no evidence that they are justly due and owing. Such charges must be supported by other evidence; and the State, in such suit, will stand in the relation of any other suitor who claims that in making a settlement, he had, by mistake, demanded and received less than was due him. The Auditor's certified statement of account, lawfully made, is presumptive or *prima facie* evidence of its correctness. It is nothing more; and this presumption or intendment may be invoked by the officer sought to be charged, equally with the State. The presumption may be overturned by proof, whether offered by the officer whose accounts are in controversy or by the State seeking to show a larger indebtedness.

The result of what we have said is, that, according to the averments of the petition in the present case, the account against Weaver, stated and certified in the Auditor's office, is larger by the sum of $1,629.43 than the Auditor was authorized to raise, by his certificate to the dignity of "presumptive evidence." Is this a case for *mandamus?* We have shown that Weaver has a specific legal right. Is there no remedy, other than *mandamus*, adequate to the enforcement of that right?—2 Brick. Dig. 240, § 4. If suit were

[State, ex rel. Weaver, v. Brewer, Auditor.]

brought against Weaver, the Auditor's certified transcript of his account would not be presumptive evidence against him, so far as it certified items of a former year, alleged to have been omitted in some former settlement. As to such items, the State would be required to produce proof, other than the certificate of the Auditor. This is the whole question ; a mere contest as to the burden of proving. The issue, whether or not the tax-collector owes the disputed items, can be made, contested and adjudicated, as well under the one construction as the other. In such suit, and on such issue, the Auditor's account, stated and certified, makes a *prima facie* case for the State, as to all items which pertain to the account proper of the particular year, or transaction he was required to audit and adjust. If any part or item of such stated account be disputed by the tax-collector, the burden is on him of disproving such *prima facie* case. On the other hand, if it be contended for the State that errors and omissions of debit occurred in an account and settlement previously stated and made, then such certified and settled account furnishes to the tax-collector *prima facie* evidence of its correctness, and casts on the State the burden of proving the errors and omissions complained of, by evidence other than the Auditor's certificate.

The bond of the tax-collector operates " from its execution as a lien in favor of the State and county on the property of such tax-collector for the amount of any judgment which may be rendered against him in his official capacity for the State or county taxes, and on the property of his sureties, from the date of his default."—Code of 1876, § 403. It is contended for petitioner that this lien constitutes such an incumbrance or cloud on the title of the property of both principal and sureties on the collector's bond, as to·impair, if not to destroy its vendibility; and that on this account, *mandamus* is the only adequate remedy to remove the cloud, and relieve the property from the incumbrance. It will be seen, in what is said above, that the Auditor's statement of the items brought forward from a former year does not prove its correctness, or raise the presumption of its correctness. If he were to certify such re-stated account as correct, his certificate as to the items brought forward would have no effect whatever. It would prove nothing. But the Auditor can certify the itemized account made by his predecessor; and if such stated, itemized, settled account show on its face errors of calculation, or other patent errors, we are not prepared to say such certified past-stated accounts would not

furnish evidence for its own correction, in any suit that might be brought on such alleged default. But this question is not before us. The petition does not aver that any suit against Weaver is either brought, or threatened to be brought—does not charge that the Auditor has certified, or will attempt to certify as correct, the items brought forward from the prior fiscal year. These disputed items can do Weaver no harm, for they are not clothed with the sanction of official authentication. We think the relator has an ample remedy in his right to make defense to any suit that may be brought against him, and that he shows no right to the extraordinary remedy of *mandamus*.

Judgment of the City Court affirmed, and *mandamus* denied.