# The State, *ex rel.* Lott *v.* Brewer.

*Application by Tax-Collector, for Mandamus against State Auditor.*

1. *Counties; power of taxation.*—As between the State and the several counties, the limited power of taxation, conferred on the latter for local·purposes, may be at any time withdrawn, or modified at the legislative will, or the taxes intercepted while in process of collection, or withdrawn from the county treasury: as to these matters, the State is dealing with its own creature and agent, and not with a person having adverse rights.

2. *General statutes; when binding on State.*—General statutes will not be so construed as to impose liabilities on the State, or to divest or diminish its rights and prerogatives, unless such intention is clearly and distinctly expressed, or is matter of necessary implication.

3. *Sale of lands for unpaid taxes; purchase by State; liability for county taxes.* When lands are sold for unpaid taxes, whether under the revenue law of 1868, that of 1874, or that contained in the Code of 1876 (§§ 450-60), and the State becomes the purchaser at the sale, the sum bid must include the county tax, with the interest thereon, and the penalties incurred ; but the State is not liable to the county for this part of the amount bid, nor is a tax-collector entitled, on settlement of his accounts with the auditor, to a credit for it, or to commissions on it.

4. *Auditor's power to re-state accounts audited by his predecessor.*—As to the power of the State auditor to re-state accounts which have been audited and stated by his predecessor in office, the court adheres to the decision announced in the case of *Weaver v. Brewer*, 61 Ala. 318.

5. *Accounts of tax-collector, as stated by auditor.*—When the accounts of a tax-collector have been audited and stated by the State auditor, the settlement is placed on the footing of an account stated, and is *prima facie* correct, and the auditor can not change its character by corrections subsequently made on the books of his office ; but it is only *prima facie* correct, and neither party is precluded by it from proving errors and mistakes in the account as stated.

6 *Estoppels against State.*- Estoppels against the State are not favored; and though they may arise from its express grants, they can not arise from the laches of its officers, since persons who deal with an officer of the government are bound to know the extent of his power and authority.

7. *Tax-collector's fees, as against State, for levying on and selling lands.*—The State is never liable for costs or fees, unless expressly given against it by law; and since the statute expressly declares that the State "will pay no costs of any tax-sale except the cost of advertising" (Code, § 450), the tax-collector is not entitled, on settlement of his accounts with the auditor, to fees for levying on and selling the lands bought in by the State.

[The State, ex rel. Lott v. Brewer.]

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

The record in this case shows that, on the 29th July, 1879, Elisha B. Lott filed his petition, which was under oath, addressed to the presiding judge of said City Court, then in session, asking a *mandamus* to Willis Brewer, the State auditor, commanding that officer to draw his warrant on the State treasurer, in favor of the petitioner, for the sum of $46,588.81, the aggregate of alleged over-payments into the treasury made by him, as tax-collector of Mobile county, during the years 1873, 1874, 1875, 1876, and 1877. An alternative writ of *mandamus* was thereupon issued, and served on said Brewer, who filed his answer or return forthwith, denying the material facts stated in the petition; and the cause was continued, by consent, until the ensuing October term, with leave to both parties to make any proper amendments. If any amendments were made, the record does not show them. The petition, and the alternative writ, describe Lott individually as the petitioner, or plaintiff; but the proceeding seems to have been afterwards conducted in the name of the State, on the relation of Lott. At the October term, 1879, " the cause was submitted to the court for decree, on the following agreed statement of facts, and on the points therein set forth, without reference to the allegations of the petition, or of the return thereto":

"1. E. B. Lott was tax-collector for Mobile county, for the years 1873--4. In that year, he was charged on the books of the State auditor with $439,550.51. It became necessary for him to sell lands of various tax-payers, in order to collect the State and county taxes due by them; and he sold lands, as such collector, on which were due taxes, State and county, to the amount of $58,851.88; and the State became the purchaser thereof, at said sum, which included the aggregate of the State and county taxes; and the tax-collector made to the State auditor certificates of purchase to the State for the lands so purchased in the name of the State. R. T. Smith, then auditor, on the 26th July, 1876, allowed the tax-collector, on settlement with him on the books of the auditor's office, the said sum of $58,851.88. Brewer, the succeeding auditor, who came into office in November, 1876, disallowed the credit, and only allowed the tax-collector the sum of $33,780.31, the amount of the State tax due on said lands, and printers' fees, excluding as a credit the amount of the county taxes due on said lands. The tax-collector paid over to the county of Mobile the amount of the county taxes on said lands so sold to the State. After Brewer disallowed the credit so allowed by Smith, his predecessor, the county of Mobile paid to the said

[The State, ex rel. Lott v. Brewer.]

E. B. Lott, the tax-collector, and he paid into the treasury of the State, the sum of $4,000 on account of the said taxes for the years 1873–4; Brewer having threatened to bring suit against the tax-collector, for the amount of the county taxes so allowed by Smith, his predecessor; and said payment was made under said threats of suit, and to avoid the same.

"2. For the year 1875, the lands which were taken by the tax-collector for unpaid taxes, State and county, were bid in by the State at tax-collector's sale, at the sum of $28,406.93, which included the aggregate of taxes, State and county, due on said lands; and the tax-collector made certificates of purchase to the State, as required by the statute. Brewer, the auditor, with whom the settlement for taxes of said year was made, refused to allow the tax-collector the said sum of $28,406.93, so bid by the State for said lands, and only allowed him $15,306.88, being the amount of the State taxes only, with the printers' fees, and excluded from the credit the whole of the county taxes due on said lands." (Similar statements are made in reference to the lands sold and bid in by the State for the taxes of the years 1876 and 1877, the settlements made with the auditor, and his refusal to allow a credit for the county taxes. For the year 1876, the aggregate amount of the State's bid was $32,879.91, and the credit allowed to the collector by the auditor was $15,409.77; and for the year 1877, the amount of the State's bid was $24,648.07, but the amount of the credit allowed is not specified.) "It is agreed that, on the foregoing facts, the court is to decide the legal questions arising thereon."

"5. Under the law, the tax-collector is required to pay to the tax-assessor the amount of the assessor's commissions for assessing the taxes. In each of the foregoing years, the collector paid to the assessor the amount of said commissions on the aggregate assessment reported to the Commissioners' Court and allowed by it; which assessment was placed in the proper books, and delivered to the tax-collector; and receipts were taken for said commissions, so paid by the collector, and filed with the State auditor. After the errors in the assessment have been corrected, and the assessment lessened, the auditor refuses to allow a credit to the collector for the amount he has so paid to the assessor, but allows only the amount estimated to be due on the corrected assessment.

"6. The tax-collector claims that he is entitled to a fee for levying on the lands sold for taxes—one dollar for each levy made by him of lands belonging to one tax-payer—and also one dollar for each sale so made; but the auditor, Brewer, refuses to allow the collector credit for the said sums for levying or selling the lands of delinquent tax-payers;

which, in the aggregate, for the years 1875, 1876, and 1877, amounts to a large sum.

" 7. The tax-collector claims commissions on the whole amount for which the lands so bought by the State sold in each of said years; and the auditor refuses to allow commissions on any amount beyond the amount of the State taxes due on said lands.

"All the foregoing questions are to be decided by the court, each party reserving the right of appeal to the Supreme Court."

On this agreed case, the court decided: " (1.) That the tax-collector is entitled, on his settlement with the auditor, to be credited with the amount of the State tax on lands bid in by the State, but not with the county tax on such lands; that for the county tax he is entitled to credit in his settlement with the county treasurer. (2.) That for the years 1873 and 1874, the credit for the county tax having been allowed by the auditor in his settlement with Auditor Smith, and the county tax on such lands having been paid over by the collector of Mobile county into the county treasury, the State is estopped, and the collector can not now be held liable for that amount, by the present auditor's correcting and restating the account. (3.) The $4,000 repaid by the county to the tax-collector, and by him paid into the treasury of the State, should be deducted from the credit to which the collector is entitled, for the lands bid in by the State for the years 1873 and 1874; or, in his settlement for subsequent years, he should be charged with said $4,000. (4.) In the tax-collector's settlement for subsequent years, on lands bid off in the name of the State, he should only be allowed or credited by the auditor with the amount of State tax on such lands. (5.) In his final settlement with the auditor, the tax-collector is entitled to a credit for payment of commissions to the assessor, only for the amount as shown by the corrected assessment, and not commissions on errors in assessment. (6.) The tax-collector, in his settlements with the auditor, is not entitled to a credit for fees for levying upon and for sale of lands sold for taxes, and bid in by the State. (7.) The tax-collector, in his annual settlements with the auditor, is not entitled to a credit for commissions on the amount of the county tax on lands bid off in the name of the State. And a peremptory *mandamus* is refused."

To this judgment and decision each party reserved exceptions, Lott excepting to every point but the second, and Brewer to that only; and, by consent and agreement, each party assigns errors on the record, as if there were separate appeals.

[The State, ex rel. Lott v. Brewer.]

Geo. F. Moore, with him Thos. H. Watts and C. J. Watson, for the appellant.—1. The relator is entitled to the remedy he seeks, if he has over-paid any sum of money into the treasury; and. this may have occurred in either one of two ways: 1st, by charging him with any thing which was not properly chargeable against him; 2d, in not allowing him all the credits to which he was entitled. In point of fact, the over-payment arises from both of these causes. The collector was improperly charged with $25,071.51, which the preceding auditor had allowed on former settlements. Those settlements were made under the provisions of the act of 1868, and were strictly within the line of the auditor's duty and authority. They were final and conclusive, and can not be disturbed by a succeeding auditor.— *Weaver v. Brewer*, 61 Ala. They were, moreover, in accordance with the long-established custom and course of business in the auditor's office, as the court will judicially take notice; and the collector has acted upon that construction of the law, as he might lawfully do, and has paid the money over to the county. If the former auditor was wrong, and the State has been injured by his act, the present auditor should proceed against him, or against the person to whom the money was paid.

2. The collector was justly entitled to a credit for the amount of county taxes due on the lands bid in by the State. He was required to bid in these lands for the State, for the full amount of all the taxes due, and give certificates of purchase to the State. If an individual had become the purchaser, he would have been compelled to pay the entire amount. When the State becomes the purchaser, it must buy just as an individual does; or, 2d, jointly with the county; or, 3d, as trustee for itself and the county. But the county can not buy or hold land, unless expressly authorized by statute; nor can it buy jointly with the State.— *Sprague v. Coenen*, 30 Wisc. 209; *Knox v. Peterson*, 21 Wisc. 247. If any trust can be fastened on the State, in favor of the counties, it must be raised by implication of law, since there is no express authority for it; and the legislative journals of the last session show that it was repudiated by the executive veto of a bill, which proposed to pay back to the counties their proportion of the money received from the redemption of lands.—Senate Journal 1878-9, p. 457. When the lands are redeemed from the auditor, after the lapse of two years, no part of the money goes back to the county; a conclusive argument against the idea of a trust. On authority, too, there can be no resulting or implied trust.—1 Perry on Trusts, § 133, and notes citing numerous cases; also, § 112. It results, then, that the State buys just an individual does; and this is

[The State, ex rel. Lott v. Brewer.]

the plain meaning and effect of the words.—Cooley on Taxation, 351.   Standing in this attitude, then, the State is bound by the strict letter of the law, as well as in justice and equity, and can claim no absolution from its own laws.   It must be borne in mind, too, that the mode of rceiving and disbursing the revenue of Mobile county is peculiar : there is no county treasurer, and no officer or tribunal authorized to give the tax-collector credit for the county taxes on lands bid in by the State.

3. As to the $4,000 paid back to the State by the county of Mobile, under protest and threats of suit, the collector should have a credit for it, and the money remain in the treasury until the county asserts her right to it.   It was not the collector's money : he was simply the agent, or officer, through whose hands it passed from the tax-payers to the county.   It never ·was the money of the State.—*Rutherford v. McIver*, 21 Ala. 750.

4. Since the collector is required to pay the assessor's commissions "out of the first moneys collected," he can not be held responsible for errors shown afterwards by the corrected assessment.

H. C. TOMPKINS, Attorney-General, *contra.*—1. The petitioner is not entitled to the relief he seeks, unless the items for which he claims credits are proper charges against the State, for the payment of which the auditor is authorized to draw his warrant on·the treasurer ; for the State can not be made liable, unless there is some express authority creating the liability ; and even where the liability exists, no officer of the government can pay out its money in satisfaction of such liability, unless expressly authorized to do so.—*Chisholm v. McGehee*, 41 Ala. 192 ; *Reeside v. Walker*, 11 Howard, 291 ; *Brashear v. Howard*, 6 Howard, 92 ; *State v. Thompson*, 10 Ark. 61 ; 15 Texas, 72 ; 2 Ired. Eq. 444.   If the tax-collector has done his duty, making monthly payments as required by law, on the first day of January he has paid over all moneys collected by him, and by the first day of March has collected and paid over all that could be collected by the sale of personal property ; and when he afterwards sells the lands, and makes his settlement with the auditor in May, being then credited with insolvents, and with the amount of State taxes only on the lands bid in by the State, his account must necessarily balance on the auditor's books.   If he is also allowed a credit for the county taxes on these lands, his account would show an over-payment to that amount; and this money he could only get back by a warrant on the treasurer, for which there is no express provision.—Authorities above

[The State, ex rel. Lott v. Brewer.]

cited. If he has retained this money in his own hands, he has violated his official duty, and can claim no advantage from that fact.

2. No analogy can be drawn between the liabilities of individuals to each other, and the liability of the State to the several counties, which are but its creatures and agents. If the State were bound, in equity and good conscience, to pay the county taxes on these lands, the tax-collector would have no authority to discharge this liability, nor could it be enforced in any manner except by express legislative authority. But the statute has provided a remedy for the collection of these county taxes, not out of the State treasury, but out of the lands when redeemed; requiring the person who redeems to pay the full amount of taxes due, with interest, and making it the duty of the probate judge to pay the county's share into the county treasury. If the State had paid the county taxes—that is, had allowed the collector a credit for them— the whole of the redemption money should be paid into its treasury.—Code, §§ 451-54; Pamph. Acts 1874-5, pp. 28-9, §§ 70-3; Pamph. Acts 1868, p. 320, §§ 75, 80.

3. Fees for levying on the lands, and for making sales, are but a part of the costs, the payment of which is expressly prohibited.—Code, § 450. Besides, there is no such thing as a levy on land for taxes.—Gachet v. McCall, 51 Ala.

4. The claim for commissions paid the assessor is equally untenable. The statute does not contemplate that all of his commissions shall be paid at once, nor does it specify any particular time at which they shall be paid. If the collector makes full payment, in advance of his own final setlement, when the proper amount can be ascertained, he can not hold the State liable for any over-payment he may have made.

5. The credits allowed for county taxes by the former auditor, were errors and mistakes, and can not prejudice the rights of the State.—Weaver v. Brewer, 61 Ala. 318; Timberlake v. Brewer, 59 Ala. 108; Commonwealth v. Eastern Bank, 10 Penn. 442; Haehnlen v. Commonwealth, 13 Penn. St. 617. The government is not bound by the act of its agent, unless the act was within the express and actual scope of his powers.—Pierce v. United States, 2 N. & H. 599; Curtis v. U. States, Ib. 144; Johnson v. United States, 5 Mason, 425; United States v. City Bank, 6 McLean, 130. The law authorizes the auditor, in making settlements with tax-collectors, to ascertain and determine the amount of each item of debit or credit as fixed by the statute, but it gives him no power to decide what are proper charges; and his act being without authority, the collector can derive no benefit from it, though

he paid over the money to the county.—*Floyd Acceptances,* 7 Wallace, 666.

BRICKELL, C. J.—The 74th section of the revenue law of 1868 provided, that when real estate, exposed to public sale for the payment of taxes, would not command a bid sufficient to cover taxes, interest, penalties and costs, the tax-collector should bid off the same in the name of the State, and make a certificate of the purchase thereof to the State, which should be delivered to the auditor.—Pamph. Acts 1868, p. 320. The revenue law of 1874-5 (Pamph. Acts, p. 28) contains the same provision. On the books of the auditor of public accounts, each tax-collector is charged annually with the entire assessment of taxes it is his duty to receive, collect, and pay into the State treasury, and is credited with all payments made by him; with errors in assessment, when properly ascertained; with such taxes as may not be collected because of the insolvency of the tax-payer; with the compensation he may pay the assessor, as it is fixed by law, and with his own compensation. The county taxes are not shown by the assessment, and the auditor is not charged with any duty in reference to them. They are levied by the Court of County Commissioners, on the assessment made by the State, and are payable by the collector into the county treasury.

The first and principal point of contention between the parties is, whether, when lands are bid in by the collector for the State, under the statutory provisions to which we have referred, the collector is entitled to a credit, in the settlement of his accounts with the auditor, for the taxes due the county, the interest thereon, and the accruing penalty, which are included in the bid he is required to make; in other words, whether the State, as a purchaser, is bound to pay so much of the sum bid as is not due to it, for the taxes assessed, the interest, penalty, and costs.

In the consideration of this question, the relations counties bear to the State must not be overlooked, but kept steadily in view. They are mere local subdivisions of the territory of the State, created by the legislature in the manner, and under the limitations of the constitution as to geographical extent, having no power or authority except that which is expressly conferred. The whole purpose of their creation is with a view to the policy of the State, to advance political organization and civil administration, and the immediate local interests and convenience of the people residing within the territory assigned to them. Whatever of power may be exercised by the different or all the departments of the local

[The State, ex rel. Lott v. Brewer.]

government which may be ordained, is the power of the State, delegated to the county. A limited power of taxation, for local purposes and advantages, is vested in some designated tribunal. It is but a parcel of the power of taxation residing in the State; is in part exercised by the State, through the appointed agency; and, except in the purposes to which the revenues derived by the exercise of the power may be applied, there is but little room for distinguishing between State and county taxation. The power conferred, as between the county and State, may be at any time withdrawn, or modified, or altered at the legislative will. The taxes levied for county purposes, while in process of collection, or after collection, may be withdrawn from the county, or from its treasury, and appropriated as the legislature may direct. There can be no ground for complaint—the State is not dealing with an individual, nor with a corporation, having or claiming adverse rights. It is simply in the pursuit of its own policy, adapting that policy to public necessities and exigencies, as may be deemed most promotive of public rights and interests.

The idea that seems to pervade the elaborate argument of the counsel for the relator, that it would be manifest injustice for the State, becoming the purchaser of the lands at a sum which embraces the county tax, as well as the State tax, to withhold from the county the county tax, is more specious than solid. The State, by the purchase, simply proposes self-protection against the delinquency of the tax-payer; becoming a purchaser on the same terms, and acquiring the rights of an individual purchaser; not cutting off the prior title, except upon the conditions, on which it would be barred and cut off if an individual were the purchaser. Protection— the full measure of protection to which the State is entitled— the delinquency of the tax-payer would not be fully cured— unless the purchase embodied all taxes the sovereignty had imposed, and which were a lien on the lands. The State and county tax are alike the burdens and impositions of the sovereignty, which it is public policy should be borne and discharged impartially.

It is, doubtless, within the legislative competency to direct and require, when lands are sold for the payment of taxes, and bid in by the State, for a sum equalling and discharging the State and county tax, that from the treasury of the State the county tax shall be paid, leaving the State to derive indemnity from the land, or from its redemption. Such a direction or requisition, imposing on the State a liability for its own taxes, to an agency of its own creation, must be clearly expressed, or the result of necessary implication. It can not be deduced from a construction which would be given statu-

tory provisions, if the relations of the State and county were different, and the county had an inherent, independent right to the tax levied for its benefit, not subject to the legislative control and will. Statutes, general in their terms, can not divest or diminish the rights or prerogatives of the sovereign, nor impose upon it liabilities; and they are not so interpreted, unless that idea be clearly and distinctly expressed, or is matter of necessary implication. Upon this foundation rests the maxim, *Nullum tempus occurrit regi ;* and the general rule, that the crown is not bound by a statute unless expressly named.

A careful examination of the revenue laws of 1868, or of 1874-5, or as now embraced in the Code of 1876, will not justify the inference, that the legislature intended to render the State liable as a purchaser to pay the county taxes on land of which it was compelled to become a purchaser, or leave all taxes, State and county, unpaid and unsecured. While such liability may not be disavowed in express terms, or expressly excluded, there are no words expressing it, and it is inconsistent with the entire scheme and system the laws prescribe. The redemption of such lands is through the judge of probate of the county in which they are situate; in which the taxes were assessed and levied, and the sale made. Upon redemption, it is his duty to pay to the auditor of the State the proportion of the redemption money belonging to the State, and to pay into the county treasury the proportion belonging to the county. If the State is liable and bound to pay the county tax, constituting a part of the sum bid at the sale, the entire redemption money would, of course, be payable to the State—in it the county could have no right or interest. The redemption of lands sold for the payment of taxes, whether the State or an individual has become the purchaser, is in the nature of a re-purchase—or, rather, the liberation of the lands from the conditional purchase, which, by the lapse of the statutory period, would become absolute and unconditional, cutting off and barring the prior title. The purchaser, who has parted with the original purchase-money, is entitled, as matter of right, to the redemption money; not only because he has parted with the original purchase-money, but because it is his conditional estate which is destroyed.

The theory and idea of the statute is, that the State is the purchaser of the lands, taking title in its own name—holding it as security for payment of both State and county taxes. When redemption is made, and there can be made a separation of the interests of the State and county, consolidated by the purchase merely for public benefit, the separation shall

be made; the county receiving a share of the money, the equivalent of its share of the sum bid at the sale, the remainder being paid to the State. A duty resting upon the State, to pay the county tax, merely because it becomes the bidder and purchaser, as matter of necessity, for public advantage, to prevent its revenue laws from being nullified by the delinquency of the tax-payer, and the unwillingness of individuals to become purchasers, can not be deduced from these statutory provisions. It would render them inharmonious and inconsistent.

There are other provisions of the statutes, referred to in the argument of the Attorney-General, which also exclude any such idea; but we will not protract this opinion by a reference to them. The City Court properly ruled, that the relator was not entitled, in the settlement of his accounts as tax-collector, to a credit for the county tax, or the interest, or penalties thereon, levied on lands which he had sold, for the payment of taxes, and which were bid in or purchased by the State.

Such a credit was allowed the relator, by a predecessor of the former auditor, in the settlement of his accounts for the taxes of the years 1873 and 1874. This credit was not allowed until the 27th July, 1876; and, of consequence, the correctness and effect of its allowance is governed by the revenue law then of force, and not by that of 1868, which had been repealed. The relator has been tax-collector of the county of Mobile since 1870; and it seems his accounts have been since running and unsettled. The present auditor insists this credit was allowed erroneously, and refuses to recognize or allow it as relieving the relator, to its amount, from liability for State taxes he may or ought to have collected during the years 1873 and 1874. Whether the present auditor is not bound by the action of his predecessor, and whether the relator has not an absolute, unqualified right to the credit, though it was allowed him erroneously, is the next point of contention.

We do not enter on the inquiry, as to the power of the auditor to restate accounts which his predecessor had audited and stated; nor his power to revise and reverse the action, as it is termed in the argument of counsel, of his predecessor. These questions were considered and decided, after deliberation and careful examination of authority, in *Weaver v. Brewer*, 61 Ala. 318; and we are content to abide the conclusions then reached.

It is the duty of the auditor to audit and adjust the accounts of all public officers, who collect and receive any part of the public revenue; and when he makes an adjustment of such

accounts, it is esteemed by the statutes as *prima facie* correct. In effect, it is placed upon the footing of an account stated between individuals, so far as he may allow credits to the officer; and as charging the officer, it is *prima facie*, or presumptive evidence of his liability. A successor in office of the auditor, discovering errors or omissions, not mere errors of calculation, or errors patent on the face of the accounts, can not, by correcting the entries on the books of the office, affect the value as evidence of the audit and adjustment of his predecessor. It remains *prima facie* evidence of its own correctness, and the *onus* of disproof rests upon the party— the officer or the State—averring that it is infected by error. *Weaver v. Brewer, supra.* The mistake of law, or of fact, whichever it may have been, that induced the auditor to enter this credit, does not conclude and bind the State. No higher dignity, or greater value, can be claimed for it, than would attach to an account stated between individuals. When mistake, error, or omission, is shown to have vitiated an account stated, the courts do not hesitate to reopen and rectify it. The laboring oar is on the party alleging mistake, and proposing to reopen : the presumptions are in favor of correctness. When mistake, or inaccuracy, is made plainly to appear, these are corrected ; otherwise, the mere inadvertence of parties dealing in the utmost good faith, might become the source of positive injustice.—1 Story's Eq. § 523.

But, it is urged the State is estopped from claiming a correction of the mistake, because the relator, relying upon its allowance, paid the county tax into the county treasury. Estoppels against the State can not be favored. They may arise from its express grants (*Magee v. Hallett*, 22 Ala. 699) ; but can not arise from the laches of its officers ; not on the notion of extraordinary prerogative, but upon a great public policy.— *U. S. v. Kilpatrick*, 9 Wheat. 735. All who deal with the officer or agent of the government, must inquire at their peril into the extent of their power. The law—the public law, of which courts and individuals are bound to take notice, and of which no party can claim ignorance—is the source of the power of the auditor, defining it with clearness and certainty. He is not clothed with the power of creating any claim binding on the State ; and to sanction and support any credit he may allow in the settlement of the accounts of any officer charged with the collection of the public revenue, the law entitling him to the credit must be shown.—*Floyd Acceptances*, 7 Wall. 676 ; *Johnson v. U. S.*, 5 Mason, 441. It was not within the scope of the powers of the auditor to allow the credit ; and the act of no agent, public or private, not within the scope of the agency, can bind the principal by

way of estoppel, no matter how much reliance may have been placed upon it.

The claim of the relator for fees for levying upon and making sales of the lands can not be sustained. The State is never liable for costs or fees, unless expressly given against it by law; and the statute declares the only costs or charges which the State shall pay on tax sales, not including these fees.—*State v. Keims*, 41 N. H. 238.

We do not deem it necessary to discuss separately the remaining assignments of error. They do not present questions of difficulty; and having examined them, we are content with the rulings of the City Court to which they are directed. The result is, on the assignments of errors by the relator, Lott, the judgment of the City Court is affirmed; on the cross-assignment by the appellee, Brewer, the judgment is reversed and remanded.