STATE *ex rel.* RICE, ATTY. GEN., *v.* LOUISIANA OIL CORPORATION.

(Division A.   Jan. 20, 1936.)

[165 So. 423.   No. 32028.]

**Wm. H. Maynard,** Assistant Attorney-General, for appellant.

**Green, Green & Jackson,** of Jackson, for appellee.

**McGowen, J.,** delivered the opinion of the court.

A demurrer to the bill in equity filed by the Attorney-General on behalf of the state against the Louisiana Oil Corporation having been sustained, and the Attorney-General having declined to amend his bill, the cause was finally dismissed, and from that decree appeal is prosecuted here.

The state of Mississippi, on the relation of Greek L. Rice, Attorney-General, alleged that the appellee, defendant in the lower court, during the years 1932 through 1935, was engaged in the business of retailing gasoline, kerosene, fuel oil, and other petroleum products in the town of Wesson, Copiah county, Mississippi; that during the time from June 1, 1932, through and including February 28, 1934, the defendant sold, from its retail station at Wesson, to George Marx and J. W. Funchess Sons, Inc., fifteen thousand six hundred fourteen gallons of fuel oil, having a gravity of below forty-six degrees Tagliaubes Baume scale on a basis of sixty degrees temperature Fahrenheit, on which fuel oil there had been paid to the state of Mississippi only one cent per gallon state excise tax; and that at the time of the sale the said fuel oil was placed in fuel tanks of motor vehicles, to-wit, motor tractors owned and operated by the purchasers of said fuel oil, to be used as the motive power in propelling said motor vehicles over the roads and highways of the state of Mississippi, said motor vehicles being used for the purpose of helping to maintain and repair said roads. It was further alleged that said oil was placed

directly in the reservoir provided by the manufacturer as the container for motor fuel in the propelling of said motor 'vehicle, and that defendant knew at the time of its aforesaid sales that the fuel oil sold by it to George Marx and J. W. Funchess Sons, Inc., was to be used by the purchasers in the manner and for the purposes already alleged. Appellant alleged that said fuel oil was used by the purchasers in the manner and for the purposes already stated—that is, to help in maintaining and repairing all existing roads and highways in the state of Mississippi, said maintenance and repairs being done by George Marx and J. W. Funchess Sons, Inc., in Copiah county, Mississippi, under contract with the board of supervisors of said county.

The bill alleged that at the time of the filing of the suit the defendant (appellee here) was liable to the state of Mississippi for an excise tax and a penalty on said fuel oil, according to chapter 93, Laws 1932, or five cents additional per gallon on the fuel oil so sold and a penalty of twenty-five per cent.

The demurrer contained two grounds: (1) That the bill failed to state any cause of action, and (2) that said bill of complaint failed to show any right in complainant to have and recover against defendant, in that the bill of complaint showed on its face that there was no liability of defendant to complainant for any taxes on the tractor fuel used in tractors in building and maintaining highways in Copiah county, Mississippi.

After examining chapter 93, Laws 1932, we are constrained to believe that the court below sustained the demurrer on the theory that a tractor was not a motor vehicle within the meaning of that statute. At the outset we may say that the bill carefully alleges that the tractors were motor vehicles, and that the fuel oil placed therein by the appellee was to be used in propelling said motor vehicles over the roads and highways of the state of Mississippi. We further note that the bill also care-

fully states that said tractors were used in helping to repair and maintain existing highways, and does not allege that said tractors were used in helping to build highways.

The Attorney-General relies upon section 6 of chapter 93, Laws 1932, and particularly upon subsection (b), for the maintenance of his suit. That section reads as follows:

"Any person engaged in the business of a distributor or wholesale dealer in gasoline shall pay for the privilege of engaging in such business an excise tax equal to and computed as follows:

"(a) Six (6) cents per gallon upon all gasoline received in this state for sale, use on the highways, or storage and/or distribution, use in internal combustion engines or for any commercial purposes whatever.

"(b) One (1) cent per gallon upon all kerosene, fuel oil, and distillate, having a gravity of 46° Tagliaubes Baume scale, or below, on a basis of 60 degrees temperature F., provided however, that if any dealer or person subject to the provisions of this law shall sell any such kerosene, fuel oil or distillate oil knowing that the same is to be used, or is intended to be used, or compounded, mixed or blended, for motor vehicle purposes, the said kerosene, fuel oil, or distillate oil, shall be subject to the same tax as gasoline."

By the same section the retail dealer is required to pay the same excise tax as is required of the distributor.

Section 10 of the act provides a penalty of twenty-five per cent for a failure to pay the tax; and section 2 makes it prima facie that all motor vehicle fuel defined in the statute is intended for use in propelling motor vehicles on the public roads and highways, and further provides for a refund to the consumer of all taxes actually paid, less one cent per gallon, on motor fuel not used in propelling motor vehicles on the public highways and roads.

We are of the opinion that the allegation of the bill

quite clearly charges that the fuel oil was furnished by the dealer with full knowledge that it was to be used on the streets and highways of the state then existing, and that this brought the case within the terms of the act.

The real and only serious question presented by the demurrer in this case is whether or not a tractor is a motor vehicle within the purview of the statute. Webster's New International Dictionary (2 Ed.) defines tractor as: "1. That which draws, or is used for drawing. Specif.: a. A traction engine. b. An automotive vehicle used for drawing or hauling something as a vehicle, plow, harrow, or reaper." There seems to be no difficulty in reaching the conclusion that a tractor, according to the dictionary, is an automotive vehicle, or motor vehicle, when it is charged that the motor fuel was placed in the tank thereof for the purpose of being used on the existing streets and highways of the state. As a court, we know that tractors are made up of metal parts, and by the combustion of motor fuel oil travel the highways just as automobiles or other motor vehicles travel; they have steering wheels and gears and proceed upon an endless chain or belt, which is sometimes called a track, and are often attached to various instruments or machines, such as road scrapers, drags, slips, or dump wagons.

In this case we are applying the fundamental rule of statutory construction—that tax laws are to be construed in favor of the taxpayer—and we are not authorized or inclined to extend or expand the statute beyond its terms. Laws imposing excise or privilege taxes are construed favorably to the citizen and are not imposed unless clearly within the provisions of such law, nor are they imposed upon a doubtful interpretation or by implication. See Pan-American Petroleum Corporation v. Miller, State Tax Collector, 154 Miss. 565, 122 So. 393, and authorities there cited.

We have reached the conclusion that a tractor which

generates its motive power from motor fuel oil is a motor vehicle within the language of the statute relied on for recovery of taxes in this case, and that the allegations of the bill are clearly within the terms of that statute. It would seem that we might rest the decision here, but counsel for appellee contends that the statute is not clear, and that notwithstanding the plain allegations of the bill we should hold that a tractor so operated should not be held to be a motor vehicle, and earnestly invites our attention to section 5565, Code 1930, which reads as follows:

"*Motor vehicle defined.*—The term 'motor vehicle' shall include all vehicles propelled by any power other than muscular, whether the same be used for pleasure or business or commercial purposes, except road rollers, street sprinklers, fire engines and fire department apparatus, police patrol wagons, and such vehicles as run only on *rails* or *tracks*." (Italics ours.) This definition was adopted by the Legislature for the purpose of regulating motor vehicles used on the streets and highways and for the purpose of enforcing general laws as to speed, etc., and further to require that such operators should have a permit so to do, and to impose a privilege tax upon each motor vehicle as defined in the act. Therefore, the purpose of the Legislature being clear, we do not think this definition could be read into, or be persuasive in interpreting, the meaning of the term "motor vehicle" as used in chapter 93, Laws 1932.

Counsel for appellee insists, however, that because a tractor operates on its own track, carried with it and as a part of it as it is propelled, removes such vehicle from the tax imposed by chapter 93 on gasoline and motor fuel oil. We are not called on to say whether or not the so-called track attached to the tractor is within the meaning of the definition as set out in section 5565, Code 1930, but we content ourselves with saying that we are dealing with a tax not upon the vehicle but upon the motor

fuel oil used in operating the vehicle; that is, the tax is directed to the distributor, wholesale dealer, or retail dealer, in certain cases, who distributes or sells the particular article here involved.

Our view is strengthened when we consider section 22 of chapter 93, Laws 1932. In that section we find this language: "The term 'for agricultural purposes' as used in this act shall be construed to mean motor fuel used in operating tractors or other farm equipment, used exclusively in plowing, planting or harvesting farm products and no part which is used in any vehicle or equipment driven or operated upon the public roads, streets or highways of this state." It is clear that the Legislature treated a tractor as a motor vehicle and exempted its motor fuel from the higher tax when such tractor was used for the specific purposes above set forth.

We are of opinion that the allegation is sufficient to present an issue for trial on the merits and to withstand a demurrer insofar as the definition of motor vehicle is concerned under said chapter 93, Laws 1932.

It is next urged that there has been a departmental construction of this statute whereby a tax of only one cent per gallon has been levied by the state auditor upon motor fuel used in tractors operated on the highways. This allegation is stoutly denied by the Attorney-General, and upon a demurrer we do not think it could be invoked to uphold the judgment of the lower court for two reasons: First, we do not know of such a departmental construction, and, second, we do not know how such a construction has been applied to other parties in the state.

It is next insisted that tractors used in the repair of existing roads are not being operated upon the existing highways and streets within the contemplation of the statute; in other words, that there is an exemption of this fuel oil from the tax of six cents per gallon because it is used to propel a tractor which is engaged in the repair of an existing highway, under contract with the

county, which is a subdivision of the state. Counsel cites Oswald v. Johnson, 210 Cal. 321, 291 P. 579; Allen v. Jones, 47 S. D. 603, 201 N. W. 353, and Des Moines Asphalt Paving Co. v. Johnson, 213 Iowa, 594, 239 N. W. 575, 577. An examination of these cases discloses that all of them are authority for the position that the fact that the tractor is used in repairing existing roads does not create an exemption from the high tax. In each of those cases the court was careful to note that the exemption from taxation sought was upon motor vehicles working on highways which had not yet been tendered to the public for its use. In other words, the tractors and other road machinery there discussed were used in the building of new roads.

We cannot yield to the persuasive argument that the state ought not to impose a tax upon motor fuel oil when by so doing an additional burden is thrown upon a subdivision of the state government, to-wit, a county. No reason is assigned, however, why that may not be done. In City of Jackson v. State, 156 Miss. 306, 126 So. 2, the distributor was held liable for the gasoline tax, although such gasoline was used by the city in its fire trucks and police cars, and for other municipal purposes. As a matter of fact, the fund derived from the tax on motor fuel oil, other than gasoline, as imposed by chapter 93, Laws 1932, is turned into the general state fund to the credit of the general fund, and if there is a benefit to the county it is remote and not immediate.

There does not seem to be any element of estoppel in this case, either by laches or otherwise. There is some argument that because of departmental construction and the delay of the Attorney-General in bringing the suit, the contract clause of the Federal Constitution would be violated, presumably upon the theory that a contract was made with the county upon the idea that motor fuel oil would be subject only to one cent per gallon tax, whereas we are holding that it is subject to six cents per gallon.

We are unable to see any force or virtue in this argument. No departmental ruling or practice appears to us to be involved at this time in this case. As to the impairment of the obligation of a contract, the parties who made the contracts with Copiah county to repair the roads presumably made them dealing at arm's length with the county and with knowledge of the law as to the amount of tax which would be required upon the particular motor fuel oil here involved. Copiah county is not before this court.

It is not now made to appear that the tax imposed is so arbitrary and excessive as to amount to a denial of equal protection, guaranteed by the Fourteenth Amendment to the Federal Constitution.

The demurrer in this case should have been overruled. The case is reversed and remanded with leave to the appellee to file answer within thirty days after the mandate of this court is filed in the court below.

Reversed and remanded.