69 So.2d 426.

STATE

v.

MADDOX TRACTOR & EQUIPMENT CO.

6 Div. 527.

Supreme Court of Alabama.

Dec. 17, 1953.

Si Garrett, Atty. Gen., and H. Grady Tiller and Willard W. Livingston, Asst. Attys. Gen., for appellant.

Curtis, Maddox & Johnson, Jasper, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court overruling the demurrer of the State of Alabama (appellant) to the bill of complaint filed by Maddox Tractor and Equipment Company, a partnership composed of Walter Maddox and James H. Maddox and Walter Maddox and James H. Maddox, individually. The case involves the construction of certain phases of the Alabama Sales Tax statutes.

On November 2, 1951, the State Department of Revenue made a final assessment against Maddox Tractor and Equipment Company, a partnership composed of Walter Maddox and James H. Maddox and Walter Maddox and James H. Maddox, individually, for additional sales tax during the period from December 1, 1949 through and including June 30, 1951, with penalty and interest thereon in the total amount of $375.12. An appeal was taken from the foregoing assessment to the Circuit Court of Lamar County, in Equity, in accordance with § 140, Title 51, Code of 1940. There a bill was filed by Maddox Tractor and Equipment Company as a partnership and the individuals composing the partnership to which the State of Alabama demurred. The court overruled the demurrer and hence this appeal.

During the period covered by the assessment Maddox Tractor and Equipment Company sold new and used farm tractors and tractor-drawn farm equipment, such as harrows, cultivators, planters, plows,

rakes, post-hole diggers, etc. The assessment was based upon an examination of records of the partnership by representatives of the State Department of Revenue. Throughout the period the partnership collected a sales tax of ½ of 1% each time equipment was sold with a new tractor but when equipment was sold with an old tractor, the partnership did not collect any tax on the equipment. The State Department of Revenue claims that all equipment should be taxed at the regular two percent rate whether it was sold with a tractor as a unit or not.

In December 1949 the books of the partnership were audited by the State Department of Revenue. That audit showed that the partnership collected on business transacted prior to July 1951 ½ of 1% on tractor-drawn equipment sold as a unit with the tractor, which was approved. At the conclusion of that audit the agents of the State, who were auditors of the State Department of Revenue, advised the partnership that they were not supposed to collect but ½ of 1% on tractor-drawn equipment when sold as a unit with a tractor. The partnership was further informed that when equipment was sold separate to the tractor, the sales tax was 2%.

On July 27, 1951 the same auditors of the State Department of Revenue advised that they had been sent by the department to make an audit on tractor-drawn equipment sold as a unit with tractors from the time of the last audit in 1949 and that the State Department of Revenue had made a new ruling known as rule and regulation A28–031, subjecting the aforesaid tractor-drawn equipment to a 2% sales tax instead of ½ of 1%. At that time they advised the partnership that "they had previously instructed differently and that on the previous audit told them to collect only ½ of 1%." The partnership did not collect but ½ of 1% under and by virtue of instructions through the State Department of Revenue and by its present action the State Department is attempting to make them pay taxes which were not collected from the customer and which they were advised not to collect from the customer, and a letter sent out by the State Department of Revenue to another company in the same business as the partnership here involved is alleged as showing the policy of the State Department of Revenue prior to July 25, 1951. The letter to which reference is made shows that the sales of tractors with tractor-drawn equipment when sold as a unit are subject to a sales tax of ½ of 1%, but tractor-drawn equipment when not sold as a unit with a tractor is subject to a sales tax of 2%.

It is alleged that the foregoing was the policy of the State Department of Revenue up until some time in 1951 when it placed a different interpretation on the sales tax act and that the aforesaid taxpayer was lulled into security in collecting only ½ of 1% on tractor and tractor-drawn equipment when sold as a unit during the audit period by the representation made by the auditors of the State Department of Revenue, that the partnership did not collect the 2% which is now claimed and that it should not be penalized by charging an additional 1 and ½% sales tax.

The action of the court in overruling the demurrer of the State of Alabama presents two questions. (1) Does tractor-drawn equipment, when sold as a unit with a tractor, come under the statute providing for a sales tax of ½ of 1% of the gross proceeds of the sale? (2) Is the State of Alabama under the facts in the case at bar, estopped from collecting the sales tax in question if the equipment does not come within the statute?

I. During the period covered by the assessment in this case, the statute involved, Title 51, § 753(c), Code of Alabama 1949 Pocket Part, provided as follows:

"Tax levied on gross receipts.— There is hereby levied, in addition to all other taxes of every kind now imposed by law; and shall be collected as herein provided, a privilege or license tax against the person on account of the business activities and in the amount to be determined by the application of rates against gross sales, or gross receipts, as the case may be, as follows: * * * (c) Upon every person, firm or corporation engaged or

continuing within this state in the business of selling any automotive vehicle or truck trailer and semi-trailer, an amount equal to one-half of one percent of the gross proceeds of the sale of said automotive vehicle or truck trailer and semi-trailer."

The final assessment in this case is based on the rates as specified in the above quoted section. This section was amended by the Legislature in 1951, Act No. 121, p. 348, by changing the rate from ½ of 1% to 1% of the gross proceeds of sale of the automotive vehicles or truck trailers and semi-trailers. However, it is to be noted that the new rate has no application to the period covered by the final assessment in this cause.

▇▇ It is a well known rule of statutory construction that where there is nothing in the statute to indicate to the contrary, words in a statute will be given the meaning which is generally accepted in popular, everyday usage. Pullman-Standard Car Mfg. Co. v. State, 253 Ala. 638, 46 So.2d 500; Carter Oil Co. v. Blair, 256 Ala. 650, 57 So.2d 64. The terms "automotive vehicles or truck trailers and semi-trailers" are not defined in the statute which we have set forth. Accordingly, taking the words as accepted in popular, everyday usage, we do not consider that tractor-drawn equipment and implements are "automotive vehicles or truck trailers and semi-trailers" within the meaning of § 753(c), Title 51, Code of 1940, P.P. We note the definition of "trailer and semi-trailer" as set forth in 60 C.J.S., Motor Vehicles, § 10, at page 118, as follows:

"Trailer; semitrailer. A trailer is a separate vehicle, which is not driven or propelled by its own power, but which is drawn by some independent power; a vehicle without motive power, designed to carry property or passengers wholly on its own structure and to be drawn by a motor vehicle. A trailer may be attached to a truck by means of a coupling arm, and a load may be carried in the trailer that is not related to the load carried in the truck, and the truck may be discon-

nected from the trailer and proceed with its load without disturbing the load on the trailer.

"A 'semitrailer,' in motor vehicle law, has been defined as a vehicle of the trailer type so designed or used in conjunction with a motor vehicle that some part of its own weight and that of its load rest upon, or is carried by, the motor vehicle. It is a separate vehicle which is not driven or propelled by its own power, but which, in order to be useful, must be attached to, and become a part of, another vehicle. It has been described as a vehicle with a box thereon to contain the load or things carried, and having two wheels at the rear, the front, when in use, resting upon the tractor truck, which thus carries part of the weight of the semitrailer. A semitrailer, of the two-wheel type, may be attached to the body of the truck, and both the truck and the semitrailer participate in carrying the same load."

It is our view that tractor-drawn farm equipment such as harrows, cultivators, planters, plows, rakes, post-hole diggers, etc., cannot be considered as within the purview of the statute. These items are farm equipment, which is used to prepare and cultivate the land for farming purposes and do not in any way fit the definition of tractor, trailer or semi-trailer as that term is generally considered in everyday usage.

In the case of Burford-Toothaker Tractor Co. v. Curry, 241 Ala. 350, 2 So.2d 420, 421, in commenting on the meaning of the term "automotive vehicle," this court said:

" 'Automotive' means: moved by its own power, self propelling. No debate, we apprehend, on this point. This feature is a major factor in fixing the sale's price. 'Vehicle' was defined by this court long before these statutes were enacted in these words: 'A vehicle is defined to be, "any carriage moving on land, either on wheels or runners; a conveyance; that which is used as an instrument of conveyance, transmission, or communication." * * *' "

As shown by the foregoing authority the word "automotive" means moved by its own power, self propelling. It is obvious that none of the tractor-drawn equipment here involved is moved by its own power nor is it self propelling in any way. The equipment is and can be moved only by being attached to a farm tractor or some other propelling power. See 60 C.J.S., Motor Vehicles, § 1, page 109; State ex rel. Rice v. Louisiana Oil Corp., 174 Miss. 585, 165 So. 423, 425; Hennessy v. Walker, 279 N. Y. 94, 17 N.E.2d 782, 119 A.L.R. 1029.

When equipment is sold with a tractor, it does not seem to us that such act would change the equipment into an "automotive vehicle". In 27 Words and Phrases, page 707, we find the following definition for tractor: "A 'tractor' is defined as that which draws or is used for drawing as a traction engine, or an automotive vehicle used for drawing or hauling something, as a vehicle, plow, harrow, or reaper. State ex rel. Rice v. Louisiana Oil Corp., 174 Miss. 585, 165 So. 423, 425." By definition a tractor comes under "automotive vehicle", but it does not bring equipment when sold with it under the term.

The rule and regulation A28–031 promulgated by the State Department of Revenue in January 1951 and amended in November 1951, correctly interprets the sales tax statutes with respect to the rate applicable to tractor-drawn farm equipment and such equipment cannot be considered as coming within the classification of "automotive vehicles or truck trailers and semi-trailers" within the meaning of § 753(c), Title 51, Code of 1940, P.P.

II. But it is argued that the State should be estopped from taking the position which it has taken in this case and from assessing the tax when the appellees were advised that they were not responsible for the tax. In the assessment and collection of taxes the State is acting in its governmental capacity and it cannot be estopped with reference to these matters. In the case of Duhame v. State Tax Commission, 65 Ariz. 268, 179 P.2d 252, 260, 171 A.L.R. 684, the court said:

"It is true that during the time plaintiff was engaged in the contracting here in question he might have passed this tax on to the government had he not been misled, by an improper interpretation of the Act by the Commission, into believing no tax was due. Still, it is the settled law of the land and of this jurisdiction that as taxation is a governmental function, there can be no estoppel against a government or governmental agency with reference to the enforcement of taxes. Were this not the rule the taxing officials could waive most of the state's revenue. * * *"

See also Durr Drug Co. v. Long, 237 Ala. 689, 188 So. 873; State ex rel. Lott v. Brewer, 64 Ala. 287, 298; Henderson v. Gill, 229 N.C. 313, 49 S.E.2d 754.

The case at bar is not a case where the State was acting in its proprietary capacity. State v. Mobile & O. R. Co., 201 Ala. 271, 78 So. 47.

In addition to what we have said, we must take note of § 100 of the Constitution of Alabama of 1901, which provides as follows:

"No obligation or liability of any person, association, or corporation held or owned by this state, or by any county or other municipality thereof, shall ever be remitted, released, or postponed, or in any way diminished, by the legislature; nor shall such liability or obligation be extinguished except by payment thereof; nor shall such liability or obligation be exchanged or transferred except upon payment of its face value; provided, that this section shall not prevent the legislature from providing by general law for the compromise of doubtful claims."

In view of this provision of the constitution, the doctrine of estoppel cannot be applied against the State acting in its governmental capacity in the collection of taxes duly levied by the legislature of the State. Union Bank & Trust Co. v. Phelps, 228 Ala. 236, 153 So. 644.

It is claimed that under § 781, Title 51, Code of 1940, the State Depart-

ment of Revenue had the right to issue rules and regulations for the ascertainment and collection of the sales tax and that in the case at bar this is exactly what the State Department of Revenue did. But taxpayers have no vested right to rely upon an erroneous interpretation of the statute exempting them from taxation and under § 100 of the Constitution of Alabama of 1901, the taxing authority has no discretion in a matter of this kind. The principle was stated by the Supreme Court of the United States in Manhattan General Equipment Co. v. Commissioner of Internal Revenue, 297 U.S. 129, 56 S.Ct. 397, 400, 80 L.Ed. 528, as follows:

"The power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end is not the power to make law, for no such power can be delegated by Congress, but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute. A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity. Lynch v. Tilden Produce Co., 265 U.S. 315, 320–322, 44 S.Ct. 488, 68 L.Ed. 1034; Miller v. United States, 294 U.S. 435, 439, 440, 55 S.Ct. 440, 79 L.Ed. 977, and cases cited. And not only must a regulation, in order to be valid, be consistent with the statute, but it must be reasonable. International Ry. Co. v. Davidson, 257 U.S. 506, 514, 42 S.Ct. 179, 66 L.Ed. 341. The original regulation as applied to a situation like that under review is both inconsistent with the statute and unreasonable.

"The contention that the new regulation is retroactive is without merit. Since the original regulation could not be applied, the amended regulation in effect became the primary and controlling rule in respect of the situation presented. It pointed the way, for the first time, for correctly applying the antecedent statute to a situation which arose under the statute. See Titsworth v. Commissioner, 3 Cir., 73 F.2d 385, 386. The statute defines the rights of the taxpayer and fixes a standard by

which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand."

III. We note that the State Department of Revenue in connection with its final assessment against the appellees included the assessment of a penalty. The legislature in its Act which was approved July 27, 1951, § 766, Title 51, Code of 1940, gave the State Department of Revenue the discretion to waive the assessment of penalties and as we understand the record, this act was in force and effect at the time the delinquency occurred in this case. We are not sure that the question as to the liability of appellees for the penalty is raised by the demurrer to the bill of complaint in this case, but since the case must be sent back to the trial court so that the court may proceed to final decree, the court will eliminate the assessment of the penalty.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.