45 So.2d 468

WALLS v. CITY OF GUNTERSVILLE.

8 Div. 523.

Supreme Court of Alabama.
March 30, 1950.

482

Marion F. Lusk, of Guntersville, for appellant.

Starnes & Starnes, of Guntersville, for appellee.

SIMPSON, Justice.

Appeal from a final decree enjoining the violation of a comprensive zoning ordinance of the City of Guntersville, Alabama.

The contest by appellant, in effect, is a challenge to the validity of the ordinance. The primary contention of the appellant is that the ordinance is an unlawful delegation of power and violates federal due process and the mandates of equal protection en-joined by the Fourteenth Amendment. A subsidiary question, which we will dispose of first, relates to the admissibility of the ordinance on technical grounds.

The scope of the inquiry is limited to a consideration of the narrow questions of whether or not the ordinance is void as not having been proven to have been duly adopted and as to whether it is unconstitutional. There is no inquiry otherwise. The appellant rests on the contention that he could proceed with the erection of his building in disregard of any of the provisions of the zoning ordinance by reason of its alleged invalidity.

The case was once before this court when the holding was announced that the ordinance as introduced was prima facie admissable. City of Guntersville v. Walls, 252 Ala. 66, 39 So.2d 567. It was there declared that the introduction of the ordiance book containing the zoning ordinance, with the statutory certificate under hand of the city clerk respecting the adoption, publication, and existence of the ordinance, met the burden of proof resting upon the city and made out a prima facie case, and the burden of proceeding or going forward with the evidence then shifted to the re-respondent, citing Code 1940, Title 7, § 369.

We adhere to that pronouncement, the result of which is that it was not necessary for the appellee to belabor itself with the effort to further prove the existence and validity of the ordinance by the introduction of other documents. We will, therefore, pretermit discussion of the assignments relative to this phase of the case. The ordinance being prima facie valid and admissable and no countervailing evidence having been proffered to establish the contrary, no error prevailed in allowing it in evidence and considering it on final hearing.

Another secondary contention is that the boundaries of the several districts zoned did not appear from the ordinance itself, but only by reference to a map recited therein as being attached to and made a part of it and that the map not being introduced rendered the ordinance inadmissable. Error cannot be predicated on this assignment. Aside from the fact that the zone location

of the property was not in dispute, no specific objection on the asserted ground was made to bring the matter to the attention of the court.

 Subsumed under this argument is also the insistence that, since the map referred to in the ordinance bore the same date as that of the final passage of the ordinance, this in some way shows that an incomplete ordinance was before the council when originally presented and was not available for public inspection until date of final passage, thus rendering the ordinance void. The presumptions are to the contrary. The city in passing the ordinance is presumed to have done what was necessary to make it valid and unless void on its face, he who challenges it has the burden of showing its invalidity. Titus v. Braidfoot, 226 Ala. 21, 145 So. 423; Rose v. Andalusia, 249 Ala. 333, 31 So.2d 66; Briggs v. Birmingham Railway, Light & Power Co., 188 Ala. 262, 66 So. 95.

The major challenge to the authority of the city to enforce the ordinance is that there is an unlawful delegation of power as regards its enforcement, that arbitrary and despotic power is reposed in the building inspector, and that thus it falls within the interdiction of the Fourteenth Amendment. On a careful review of the authorities, we have concluded that this contention is untenable.

 As regards the delegation of power, Section 12 A of the ordinance provides: "The provisions of this ordinance shall be administered and enforced by the Mayor or the building inspector and or other person delegated by the Mayor to carry out this function for him. This official shall have the power to make inspections of buildings or premises necessary to carry out his duties in the enforcement of this ordinance."

This section does not, as argued, vest in the .mayor authority to delegate enforcement of the ordinance to some private individual, a neighbor, etc. The specific limit of this delegated power is the appointment of a building inspector or some other "official" to execute the function of granting building permits. It is no forbidden dele-

gation of power for the ordinance to authorize the appointment of some official or the selection of some instrumentality for the purpose of ascertaining facts to which the legislation is directed and to put into effect the prohibitive features of such ascertained facts. People of State of New York v. Van De Carr, 199 U.S. 552, 26 S.Ct. 144, 50 L.Ed. 305; Panama Refining Co. v. Ryan, 293 U.S. 388, 426, 55 S.Ct. 241, 79 L. Ed. 446; Wilson v. Eureka City, 173 U.S. 32, 19 S.Ct. 317, 43 L.Ed. 603; Gundling v. Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725; Fischer v. St. Louis, 194 U.S. 361, 24 S.Ct. 673, 48 L.Ed. 1018.

 The statute armed the city with ample power to adopt ordinances and regulations not inconsistent with state laws or state or federal constitutions in regard to zoning "to promote health and the general welfare" etc. Code 1940, Title 37, § 777 et seq. And the administration of such an ordinance may, indeed of necessity must, be committed to subordinate officers without offense to any principle of constitutional law. Walker v. City of Birmingham, 216 Ala. 206, 112 So. 823.

But it is said that because of § 8 of the ordinance, the constitution is violated. Section 8 provides: "Any use whatsoever, not in conflict with any other ordinance of the City, is allowed in an Industrial District, provided that no use shall be permitted which would be offensive because of injurious and obnoxious noise, vibrations, smoke, gas, fumes, odors, dust or other objectionable features, or would be hazardous to the community on account of danger of fire or explosion."

The property the subject of this litigation is located in an industrial district and it is argued that Section 8 fails to fix any uniform rule of action by which the city, through its delegated agency, may act and that, therefore, there is vested in that agency or official an uncontrolled and arbitrary discretion to determine in the individual cases who should or should not be issued a building permit and to say what is or is not "offensive" within the meaning of the ordinance and that, therefore, this phase makes the ordinance void as coming within the ban of the Fourteenth Amendment.

Ordinances of the character now under review find their justification in the exercise by the municipality of its police power asserted for the protection of the public welfare and that its enforcement might sometime be arbitrary or discriminatory does not of itself render the ordinance void. Resort to the courts is open for protection in such case. Village of Euclid v. Ambler, 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Leary v. Adams, 226 Ala. 472, 147 So. 391.

The inquiry is not whether in the instance considered appellant has been discriminated against or whether the type of business which he proposes to carry on in the building would be "offensive because of injurious and obnoxious noise, vibrations, smoke, gas, fumes, odors, dust, or other objectionable features, or would be hazardous to the community on account of danger of fire or explosion," but whether or not these general proscriptive terms are so vague and indefinite as to furnish no standard of conduct by which the official in charge under the ordinance may be guided. It is quite plain to us that such is not the case.

Certain recognized canons of construction are established to guide decision.

We must be certain that the ordinance is so plainly and palpably inadequate and incomplete as to be convinced beyond reasonable doubt that it offends the constitution or we will not strike it down.

And the modern tendency has been to be liberal in upholding ordinances of this character in order to facilitate their proper administration. The courts have ruled that considerable freedom to exercise discretion and judgement must of necessity be accorded to officials in charge under such an ordinance. Metzenbaum, Law of Zoning, p. 296; 37 Am.Jur. 778, § 160.

American Jurisprudence, supra, as to this modern tendency, notes that: " * * * ordinances need not always prescribe a specific rule of action and * * * some situations require the placing of some discretion in municipal officials, as in cases where it is difficult or impracticable to lay down a definite or comprehensive rule for guidance, or where the discretion relates to the administration of a police regulation and is essential to the protection of the public morals, health, safety, welfare, etc. * * *

"The view generally prevailing is that there is no valid objection to ordinances which vest in municipal administrative officials or boards, or even in a single officer, authority and arbitrary discretion relating to matters which are in the nature of privileges that is, the using of property, the engaging in occupations, or the committing of acts which might well be forbidden altogether, but which under certain conditions may be harmless or well managed. In such cases, it is usually held that ordinances need not prescribe specific rules of action or guidance for the administrative officers who are to put the ordinances into operation * * *" 37 Am.Jur. 780, 781, § 160.

Provisions of such general nature as in Section 8 are not uncommon, but are usual in setting out the uses to which property in industrial zones may be restricted. Yokley, Zoning Law, § 46, pp. 65–66. These provisions are uniform in application, the standards set up are not so indefinite as to confer unlimited power and they relate directly to the health and public welfare. We think, therefore, the ordinance establishes sufficient primary standards for guidance of the officials in the enforcement of that section of the ordinance as to avert the criticism against it. It would be next to impossible to designate in minute detail the various types and character of businesses which might or might not be permissive or offensive, and the determination of such facts of necessity must be left to the honest judgment of some designated official.

The terms "injurious and obnoxious noise, vibrations, smoke, gas," etc. embodied in the ordinance are not unusual or ambiguous expressions, but are common terms and intended to protect the public welfare and clearly furnish sufficient norms of conduct to guide a conscientious official in the performance of his duties under the ordinance. It is to be presumed that public officials will discharge their duties honestly and in

accordance with law and power only is vested by the ordinance to issue and withhold permits in the honest exercise of a reasonable discretion. Should such official act arbitrarily or dishonestly, full protection by appeal to the board of adjustment (§ 10 C) and then by review in the courts (§ 11) is accorded any aggrieved party and the requirements of procedural due process are thereby satisfied. People of State of New York v. Van De Carr, supra, and cases cited therein.

We see no more reason to put upon the ordinance the stamp of invalidity on the asserted ground than in such cases as Butterfield v. Stranahan, 192 U.S. 470, 24 S.Ct. 349, 48 L.Ed. 525, where a statute was upheld which authorized the Secretary of the Treasury, upon recommendation of a board of experts, to establish uniform standards of purity, quality and fitness for all kinds of tea imported into the United States; or where statutory authority to the Secretary of War to determine whether bridges and other structures constitute "unreasonable obstructions to navigation" and to remove such obstructions was upheld, Union Bridge Co. v. United States, 204 U.S. 364, 386, 27 S.Ct. 367, 374, 51 L.Ed. 523; Monongahela Bridge Co. v. United States, 216 U.S. 177, 30 S.Ct. 356, 54 L.Ed. 435; Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; or the authority of the Interstate Commerce Commission in the execution of the declared policy of Congress in enforcing reasonable rates in preventing undue preferences and unjust discriminations, in requiring suitable facilities for transportation in interstate commerce, was held to have been validly conferred, St. Louis, I. M. & S. R. v. Taylor, 210 U.S. 281, 287, 28 S.Ct. 616, 52 L.Ed. 1061; Intermountain Rate Cases (United States v. Atchison, T. & S. F. R. Co.), 234 U.S. 476, 34 S.Ct. 986, 58 L.Ed. 1408; Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202; or where approval was given of the authority of the Radio Commission to assign various frequencies or wave lengths to stations "as public convenience, interest or necessity requires." Federal Radio Commission v. Nelson Bros. Bond & Mortgage Co., 289 U.S. 266, 53 S.Ct. 627, 636, 77 L.

Ed. 1166, 89 A.L.R. 406. These cases and many others are sustained on the principle that these agencies and officials have not had delegated to them arbitrary or despotic power, but are merely the agencies to carry out a declared policy of the legislative body; that it was impracticable for Congress to provide specific regulations for the various and varying details of management and of necessity such details must be left to the agent for execution, which "was merely conferring administrative functions upon an agent, and not delegating to him legislative power." United States v. Grimaud, 220 U.S. 506, 615, 516, 31 S.Ct. 480, 482, 55 L.Ed. 563; Panama Refining Co. v. Ryan, supra.

And so in the instant case the ordinance legislated as far as was reasonably practicable and of necessity must leave to the official who must act under it the discretion of determining whether a given status comes within the provisions thereof. We hold the ordinance valid against the challenge made.

▮▮▮▮▮ Appellant finally raises the minor question as to the sufficiency of the bond given by the city. This contention can be disposed of upon several grounds.

Section 1059, Title 7, Code 1940, permits the judge, in his discretion, to grant a temporary restraining order upon the execution of a sufficient bond. This appeal, however, is not from an order granting a temporary injunction, but is from a final decree granting to appellee a permanent injunction. We are not informed in brief, nor does the record disclose the necessity for the bond here in question. The appeal bond is not here involved and the appeal itself operates to supersede the decree and maintains the status quo, where the status is a condition of rest and not action. City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550.

Certainly the State cannot be required to give a bond as contemplated by § 1059, Title 7, Code 1940. American Book Co. v. State, 216 Ala. 367, 113 So. 592. And this Court has held that a city in the exercise of its public functions is an instrumentality of the State. State ex rel. Brooks v. Gullatt, 210 Ala. 452, 98 So. 373; Carey v. City of Haleyville, 230 Ala. 401, 161 So.

496; Robbins v. City of Sheffield, 237 Ala. 674, 188 So. 874; City of Bessemer v. Personnel Board for Jefferson County, 240 Ala. 411, 199 So. 815.

█ Section 506, Title 37, Code 1940, grants to all municipalities the right to enjoin and abate any public nuisance injurious to the health, morals, comfort or welfare of the community. And while the question of the necessity of a municipality to make bond in such cases as an incident to the granting of a temporary injunction is not here to be decided, it is doubtful whether or not such a bond could be required in view of § 506, Title 37, Code 1940, and the further fact that the municipality in the maintaining of such an action is an instrumentality of the State. American Book Co. v. State, supra. See also annotations to Missouri ex rel. v. McElhinney, 83 A.L.R. 202, 205.

Upon motion and hearing in the lower court, the amount of the original bond was substantially increased. Due to the doubtful nature of the bond and from the evidence submitted before the lower court, we are unwilling to declare error for failure of the lower court to further increase the amount of the bond.

Affirmed.

BROWN, LIVINGSTON and STAKELY, JJ., concur.