The State of Alabama Highway Department ("the Department") filed a declaratory judgment action against Headrick Outdoor Advertising, Inc. ("Headrick"), seeking, among other things, a judgment declaring that two outdoor advertising signs owned by Headrick had been erected, and were being maintained, in an area zoned for agricultural use and in violation of the State Highway Beautification Act — Outdoor Advertising ("the State Act"), Ala. Code 1975, §§ 23-1-270 through 23-1-288, and a mandatory injunction ordering Headrick to remove the signs. Headrick answered, asserting the defenses of waiver, *Page 1203 
estoppel, and laches. Headrick also filed a counterclaim, pursuant to § 23-1-280; Amendment XIV of the United States Constitution; and Article I, § 24, Constitution of Alabama of 1901, seeking "just compensation required by law prior to the removal of . . . the signs [at issue]"; seeking an injunction restraining the Department from removing the signs "until the total amount of just compensation due has been paid to Headrick"; and seeking to have "court costs related to the determination of just compensation [taxed] to the [Department]" if the trial court held in favor of the Department. Both the Department and Headrick moved for summary judgment. The trial court denied the Department's motion for summary judgment, but granted Headrick's summary judgment motion, holding as follows:
 "[Headrick's] motion for summary judgment is in all respects GRANTED and . . . [the Department] is equitably estopped from claiming that the signs
identified in the complaint and erected between March 1973 and November 1988 in reliance on permits issued by the City of Montgomery, Alabama, are illegal under the Alabama Highway Beautification Act — Outdoor Advertising.
 "[The Department's] motion for summary judgment on [Headrick's] counterclaim [seeking just compensation if the trial court determines that the signs must be removed], and [Headrick's] counterclaim itself, are dismissed without prejudice as moot."
(Emphasis added.) The Department appeals. We reverse.
We note that in entering the summary judgment in favor of Headrick, the trial court did not address whether the signs were illegally erected and maintained in violation of the State Act and did not address Headrick's counterclaim as to what, if any, just compensation it was entitled to if it was determined that the signs had to be removed. Rather, the judgment effectively estopped the state from even "claiming that the signs . . . erected . . . were illegal" under the State Act.
The narrow issue for our review, therefore, is whether the state is, in fact, estopped from claiming that the signs at issue are illegal under the State Act.
Congress enacted the Highway Beautification Act of 1965,23 U.S.C. § 131 ("the Federal Act"), to control the erection and maintenance of billboards "in order to protect the public investment in . . . highways, to promote the safety and recreational value of public travel, and to preserve natural beauty." Section 131(a). A state, in order to avoid reduction in federal-aid highway funds to which it was entitled, was required to provide effective control of billboards, which control permitted the erection of certain types of outdoor advertising signs (§ 131(c)) "within areas adjacent to the Interstate [Highway] . . . which [areas] are zoned industrial or commercial under authority of State law, or in unzoned commercial or industrial areas as may be determined by agreement between the several States and the Secretary"; and the Federal Act provided that the "States shall have full authority under their own zoning laws to zone areas for commercial or industrial purposes, and the actions of the States in this regard will be accepted for the purposes of this Act." Section 131(d). In response to the Federal Act, the Alabama legislature enacted the State Act, which permitted outdoor advertising signs erected subsequent to February 10, 1972, in areas adjacent to interstate highways and primary highways (such as the signs at issue) in "business areas" (see §§ 23-1-272(3), (4), and (5)); such an area is defined as "[a]ny part of an adjacent area which is at any time zoned for business, industrial or commercial activities under the authority of any law of this state or not zoned, but which constitutes an unzoned commercial or industrial area." Section23-1-271(1). "An unzoned commercial, business or industrial area" is defined as "[t]he land occupied by the regularly used building, parking lot, storage or processing area of a commercial, business or industrial activity, and the land within 600 feet thereof on each side of the highway," with certain exceptions, none which are applicable here. Section23-1-271(10). "Commercial or industrial *Page 1204 
activities for purposes of unzoned industrial and commercial areas" is defined as "[t]hose activities generally recognized as commercial or industrial by local zoning authorities in this state, except that [outdoor advertising structures and agricultural . . . activities] shall [not] be considered commercial or industrial." Section 23-1-271(11).
In May 1973, the City entered into an agreement with the State (Ordinance 31-73 ("the Ordinance")), acting by and through the Department, "in keeping with [the State Act.]" That agreement provided:
 "The Director shall effectively control or cause to be controlled, the erection and maintenance of outdoor advertising signs . . . in all business areas [defined in Article IX(2)(a) of the Ordinance as 'any part of an adjacent area which is at any time zoned for business, industrial, or commercial activities under the authority of any law of this State'] that are erected subsequent to the effective date of this article [and when the City] has made a determination of customary use, as to size, lighting and spacing, such determination may be accepted in lieu of controls by agreement in the zoned commercial and industrial area within the geographical jurisdiction of such authority."
Article IX of the Ordinance provided:
 "In accordance with customary use in the geographical jurisdiction of the City . . . no outdoor advertising structure shall be erected or maintained adjacent to an Interstate . . . highway in the geographical jurisdiction of the [City], except [outdoor] advertising signs in existence in business areas on the effective date of this Ordinance and outdoor advertising signs to be erected in areas zoned commercial, industrial, or business."
The agreement between the City and the Department remained in effect from May 1973 until November 1988. The two signs at issue, which Headrick purchased in the summer of 1987 from Lockridge Sales and Marketing, Inc., had been erected in agricultural areas pursuant to permits issued by the City, during the time in which the agreement was in effect.
Headrick does not dispute the fact that the signs are erected in agricultural areas, nor does it argue that the term "business" in the State Act and in the Ordinance (albeit not found in the Federal Act) is broad enough to encompass an agricultural area. Rather, Headrick contends that because each sign was erected pursuant to a permit issued by the City during the period in which the City was authorized by the Department to regulate outdoor advertising within the City's zoning jurisdiction, the Department is equitably estopped from asserting that the signs failed to comply with the State Act.
The Department does not dispute that the two signs at issue are within the zoning jurisdiction of the City or that the signs were erected and are maintained in areas adjacent to Interstate Highway 65 pursuant to a permit issued by the City under the agreement between the City and the Department. Rather, the Department argues that because the signs were erected in an agricultural area in which outdoor signs are statutorily prohibited and not in a "business area" as required by the State Act, the signs were illegally erected and are illegally maintained and must be removed. Consequently, the Department contends that the doctrine of estoppel cannot bar it from requiring that the illegally erected and maintained signs be removed, because it is correcting a mistake or violation of law.
Equitable estoppel is to be applied against a governmental entity only with extreme caution or under exceptional circumstances. First Nat'l Bank of Montgomery v. United States,176 F. Supp. 768 (M.D.Ala. 1959), aff'd, 285 F.2d 123 (5th Cir. 1961); Ex parte Fields, 432 So.2d 1290 (Ala. 1983).
 "Under the settled law, equitable estoppel . . . must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or *Page 1205 
facts. The representation must be as to the facts and not as to the law. . . .
". . . .
 " 'The doctrine of equitable estoppel is not a bar to the correction . . . of a mistake of law.' "
(Emphasis added.) 176 F. Supp. at 772, quoting Automobile Clubof Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707,709, 1 L.Ed.2d 746 (1957).
In Ex parte Fields, supra, at 1293, this Court held that neither the state or its political subdivisions can be "estopped by doing that which they have no authority to do." Consequently, as this Court has held, the doctrine of estoppel may not authorize a city to do that which the city had no authority to do, Alford v. City of Gadsden, 349 So.2d 1132
(Ala. 1977); and a city may not adopt a zoning ordinance that contravenes a state law. Walls v. City of Guntersville,253 Ala. 480, 45 So.2d 468 (1950). See, Corey Outdoor Advertising,Inc. v. Board Of Zoning Adjustments, 254 Ga. 221,327 S.E.2d 178, 182 (1985) ("equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit"). See also, State v. Maddox Tractor Equipment Co., 260 Ala. 136, 69 So.2d 426 (1953); Durr Drug Co.v. Long, 237 Ala. 689, 188 So. 873 (1939); and State ex rel.Lott v. Brewer, 64 Ala. 287 (1879) (cases in which this Court has held that the state acts in its governmental capacity in assessing and collecting taxes and licenses and cannot be estopped in those matters, even if it had failed in the past to assess and collect those taxes).
Based on the foregoing, we hold that the Department cannot be estopped from raising the illegality of the signs or from claiming that they were illegally erected under the State Act. However, the issue whether the signs were, in fact, erected and maintained in violation of the law, i.e., whether the term "business" in the State Act ("commercial, business or industrial activities") is broad enough to encompass an agricultural area, is for the trial court to determine. Therefore, we reverse and remand for a determination of whether the signs at issue were illegally erected in a statutorily prohibited area and therefore must be removed; and, if so, for a determination of whether Headrick is entitled to just compensation for the removal of the signs and, if so, a determination of the amount that would justly compensate Headrick as a result of their removal.
We note the cases Headrick presents in support of its estoppel argument — Childree v. Health Care Authority of theCity of Huntsville, 548 So.2d 419 (Ala. 1989); Ford v. JacksonSquare, Ltd., 548 So.2d 1007 (Ala. 1989); Ex parte StateDepartment of Human Resources, 548 So.2d 176 (Ala. 1988); andEx parte Four Seasons, Ltd., 450 So.2d 110 (Ala. 1984). However, Headrick's reliance on these cases is misplaced, because none of these cases holds that the state can be estopped from preventing a continuing violation of the law.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
KENNEDY, J., dissents.