This decision, applying the doctrine of equitable estoppel against the City of Prattville, although purportedly limited to "the facts of this case," requires the City of Prattville to furnish fire protection to residents of the police jurisdiction, even though the City, using what appears to be sound accounting procedures for determining the average cost of a fire call, has determined that furnishing that protection will cause it to run an annual deficit of over $70,000.
The effect of this decision, although purportedly grounded on principles of equitable *Page 1165 
estoppel, and although purportedly limited to the "facts of this case," not only will affect Prattville, but could also adversely affect many other municipalities of this State that are furnishing municipal services to their police jurisdictions. Specifically troubling is the holding that a municipality cannot take the total budget for the fire department, divide the number of fire calls into the budget to get the cost per call, and determine the "incremental" cost of fire protection in the police jurisdiction based on those figures.
Although the Court does not specifically hold that a municipality that collects taxes and license fees from residents of the police jurisdiction is under a "duty" to provide those services, the Court uses the word "duty" in the opinion many times, and the effect of the holding appears to be that if a municipality elects to impose the taxes and license fees it is statutorily authorized to collect, which are only one-half those paid by city residents, then it must provide the municipal services, and that if it attempts to discontinue any of them because it has determined that the taxes and fees collected do not provide reasonable compensation for the expense of providing the services to its police jurisdiction, that determination can be subjected to judicial review. I think the decision incorrectly applies Alabama law; I must respectfully disagree with it and express the reasons for my disagreement.
The actual holding of the Court is as follows:
 "We agree with the trial court that Joyner's reliance on continuing city fire protection was reasonable under the facts of this case. After 22 years of providing fire protection and collecting revenues for that protection, Prattville may not arbitrarily terminate this service. . . . Prattville must continue to provide fire protection to the police jurisdiction, because Prattville chose to collect revenue from the businesses and residents of the police jurisdiction in order to finance those services, and because Prattville created and maintained an ongoing relationship with the police jurisdiction in regard to those services. More importantly, the businesses and residents of the police jurisdiction reasonably relied on the continuation of that relationship."
661 So.2d at 1163. (Emphasis original.) In reaching its decision, the Court holds that residents of the police jurisdiction do not have to share in the "fixed" costs of the fire department, which the Court defines as "the expenses [that] would exist as a result of providing fire protection within the corporate limits regardless of whether [the city] provided the fire protection to the police jurisdiction." 661 So.2d at 1163.
It is apparent from a reading of this holding that the Court is of the opinion that the "incremental" costs of providing municipal services cannot include such things as the cost of fire stations and fire equipment. If that is the holding, then it is especially inequitable in view of the fact that Prattville can collect from those in the police jurisdiction only one-half the taxes and license fees it imposes on residents and businesses within the corporate limits.
The relationship between a municipality and the residents of the police jurisdiction has been the subject of several court decisions during the past few years. I think it would be preferable for the courts to leave the resolution of these disputes between residents of cities and those who live in the police jurisdiction over who should have to pay, to the Legislature. Because courts cannot levy taxes and raise license fees, they seem particularly ill equipped to resolve the conflicts between residents of a city and those that live outside the city, especially when those conflicts are over the providing of municipal services, the amount of taxes that can be levied, and the right to elect the regulators and decision makers. Consequently, I must disagree with the judgment of this Court. I think this action should be dismissed, with the recommendation that the plaintiff take his complaint to the Legislature, which could make the hard public policy choices between the competing interests.
The Court, in holding that Prattville must continue furnishing fire protection service in the police jurisdiction, does not specifically hold that a municipality is under a duty to furnish all municipal services to the police jurisdiction, but that appears to be the effect *Page 1166 
of its holding, because most municipalities in the State probably choose to furnish municipal services to their police jurisdictions and probably have imposed the statutorily authorized license fees and taxes, which, as I have already pointed out, are only one-half what they are in the corporate limits. The decision, no doubt, will be interpreted to require every municipality that has collected license fees and taxes from businesses and residents of the police jurisdiction to continue to furnish all municipal services, even though the municipality determines, as Prattville had, that to continue furnishing the services, based on the revenues received, would cause the municipality to suffer a deficit, which it could not erase by imposing higher license fees or taxes on residents and businesses in the police jurisdiction.
In reaching its conclusion, the Court applies a principle of law stated in Holt Civic Club v. City of Tuscaloosa,439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (the so-called "no taxation without representation" case). In that case, the Court held that a municipality can impose taxes and license fees on residents and businesses in the police jurisdiction, without giving those residents a right to vote, if the amount collected is reasonably related to the costs of the services furnished. The Court here, using that case, applies its own calculus of "incremental costs," and, using its own accounting formula, determines that the City of Prattville's accounting procedures are "flawed" because they divide the total fire budget by the total fire calls made; this would appear to be a fair way of apportioning the cost of fire protection and would appear to treat all subscribers equally, whether they live in the corporate limits or in the police jurisdiction.
The formula for determining whether a particular tax or license fee is authorized is set out in State Department ofRevenue v. Reynolds Metals Co., 541 So.2d 524 (Ala. 1989), as follows:
 "A municipality must estimate the amount reasonably necessary to provide for the protection of the lives, health, and property of businesses and residents, and for the maintenance of good order and the preservation of public morals within its entire police jurisdiction. The municipality may then, by a properly adopted ordinance or resolution, set a license fee for businesses within its police jurisdiction, but outside its city limits, so that the total receipts from all such licenses do not exceed the amounts estimated to be reasonably necessary to provide these services to the police jurisdiction. No license fee charged to any business within the police jurisdiction, but outside the city limits, shall be more than one-half of the license fee charged to a similar business within the city limits. Such ordinances shall be presumed to be reasonable, and the burden shall be upon the business challenging the license fee charged to it to prove that such license fee is unreasonable or that the ordinance was illegally adopted or is violative of the statutory or fundamental law of the United States or of the State of Alabama."
541 So.2d at 532. The formula set out in Reynolds Metals
appears to closely parallel the formula used by the Supreme Court of the United States in Holt Civic Club v. City ofTuscaloosa, in determining whether a tax or license fee could be constitutionally imposed on citizens without giving them the right to vote.
The ultimate question presented, of course, is: What happens when the revenue from license fees and taxes that a municipality is authorized by the Legislature to collect is insufficient to compensate the municipality for the municipal regulation and services the municipality is furnishing in the police jurisdiction? That is the question Prattville asks, and it is the critical question presented in this case. I believe that the Court addresses it incorrectly, especially when it uses its own calculus to determine that the principles of equitable estoppel should apply.
I recognize, of course, that the doctrine of equitable estoppel can be applied against a governmental entity, like the City of Prattville, but it should be applied against such entities "only with extreme caution or under exceptional circumstances." In State Hwy. Dep't v. Headrick OutdoorAdvertising, Inc., 594 So.2d 1202 (Ala. 1992), this Court said: *Page 1167 
 "Equitable estoppel is to be applied against a governmental entity only with extreme caution or under exceptional circumstances. First Nat'l Bank of Montgomery v. United States, 176 F. Supp. 768
(M.D.Ala. 1959), aff'd, 285 F.2d 123 (5th Cir. 1961); Ex parte Fields, 432 So.2d 1290 (Ala. 1983).
 " 'Under the settled law, equitable estoppel . . . must be predicated upon the conduct, language, or the silence of the party against whom it is sought to be invoked. Said conduct, language, or silence must amount to the representation or concealment of a material fact or facts. The representation must be as to the facts and not as to the law.'
". . . .
 "(Emphasis added [in Headrick Outdoor].) 176 F. Supp. at 772, quoting Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707, 709, 1 L.Ed.2d 746 . . . (1957).
 "In Ex parte Fields, supra, at 1293, this Court held that neither the state [nor] its political subdivisions can be 'estopped by doing that which they have no authority to do.' Consequently, as this Court has held, the doctrine of estoppel may not authorize a city to do that which the city had no authority to do, Alford v. City of Gadsden, 349 So.2d 1132 (Ala. 1977); and a city may not adopt a zoning ordinance that contravenes a state law. Walls v. City of Guntersville, 253 Ala. 480, 45 So.2d 468 (1950). See, Corey Outdoor Advertising, Inc. v. Board of Zoning Adjustments, 254 Ga. 221, 327 S.E.2d 178, 182 (1985) ('equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit'). See also, State v. Maddox Tractor Equipment Co., 260 Ala. 136, 69 So.2d 426 (1953); Durr Drug Co. v. Long, 237 Ala. 689, 188 So. 873 (1939); and State ex rel. Lott v. Brewer, 64 Ala. 287 (1879) (cases in which this Court has held that the state acts in its governmental capacity in assessing and collecting taxes and licenses and cannot be estopped in those matters, even if it had failed in the past to assess and collect those taxes)."
594 So.2d at 1204-05. In Headrick Outdoor, this Court discussed at some length the application of the doctrine of equitable estoppel against a governmental agency, and it concluded that the Alabama Highway Department could not be estopped from preventing the defendant's continuing violation of the State Highway Beautification Act, in allegedly maintaining billboard signs in a prohibited area, notwithstanding the fact that a State agent had issued a permit to erect the signs. While I realize that whether a municipality must furnish fire protection to the residents of the police jurisdiction is a more complicated issue than was involved in Headrick Outdoor, the law of equitable estoppel remains constant, and this Court, in Headrick Outdoor, set out that law. Under Alabama law, the doctrine of estoppel is rarely applied against a municipal corporation and a municipality cannot be estopped from questioning the legality of a contract into which it had no authority to enter. City of Leeds v. Town of Moody, 294 Ala. 496, 319 So.2d 242 (1975). Nor may the doctrine of estoppel authorize a city to do that which it has no authority to do.Id.; Board of School Commissioners of Mobile County v. Hudgens,274 Ala. 647, 151 So.2d 247 (1963).
Although the doctrine of estoppel may be applied in a proper case (see, Alford v. City of Gadsden, 349 So.2d 1132, 1135
(Ala. 1977) (a case cited by the majority and relied on substantially by the majority in reaching its result)), I can find no case in which the doctrine has been applied unless there was some statutory or other legal authority for the municipality to act. In fact, the Alford case itself does not hold otherwise. In Alford, the City of Gadsden brought a declaratory judgment action to void a concession lease on the ground that it had no authority to enter into the lease. It is clear from a full reading of the Alford case that this Court held that the City of Gadsden had authority to enter into the lease there under consideration, and that it would be estopped to deny that it did. This Court specifically said: "[W]e think it clear that the city had the general authority to execute a lease for this concession stand in the public park." 349 So.2d at 1134.
The majority also cites City of Montgomery v. Weldon,280 Ala. 463, 195 So.2d 110 *Page 1168 
(1967), to support its holding. In that case, the issue was whether the City of Montgomery should be estopped to plead a statute of limitations defense, in light of its prior dealings with the plaintiff. The issue was stated in the opinion as follows:
 "The sole issue may be stated as follows: whether a municipality may actively mislead a citizen who was injured on its streets by its negligence, by representing to him that his claim is sufficiently filed and perfected, and by urging him not to hire an attorney or to take any further action for a year; and, after having led him into error, successfully set up his failure to strictly comply with the statutory requirements of a verified claim within six months, reciting the dollar amount of the claim."
280 Ala. at 466, 195 So.2d at 112. In applying the estoppel doctrine to the facts of that case, the Court said:
 "This court, in Ellison v. Butler, 271 Ala. 399, 124 So.2d 88, quoted 19 Am.Jur., Estoppel, § 34, wherein equitable estoppel is defined as the principle of law 'by which a party who knows or should know the truth is absolutely precluded, both in law and in equity, from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another, who was excusably ignorant of the true facts and who had a right to rely upon such words or conduct, to believe and act upon them thereby, as a consequence reasonably to be anticipated, changing his position in such a way that he would suffer injury if such denial or contrary assertion were allowed.' "
280 Ala. at 466-67, 195 So.2d at 112. Applying this definition of "equitable estoppel" to the facts of Weldon, one is forced to the inescapable conclusion that Weldon presented an instance where the doctrine must be invoked.
 "There are also two other reasons for applying the doctrine of estoppel: (1) the purpose of the statute has been fulfilled, and (2) the principle of estoppel has been applied in the past against a municipality. With respect to (1) above, the cases of City of Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; Smith v. City of Birmingham, 243 Ala. 124, 9 So.2d 299; City of Birmingham v. Young, 246 Ala. 650, 22 So.2d 169; and City of Anniston v. Rosser, 275 Ala. 659, 158 So.2d 99, are authority that the purpose of § 504 is to apprise the city of the accident so it may investigate and determine the merit of the claim, and to adjust the same without the expense of litigation if the circumstances warrant. Here, the defendant was notified of the accident the very day it occurred and repaired the sidewalk within two days. It maintained close contact with, and received cooperation from Mr. Weldon from the time of his accident until suit was filed. Clearly, the purpose of the statute was fulfilled. As for (2) above, this court has applied the doctrine of estoppel in the cases of Powell v. City of Birmingham, 258 Ala. 159, 61 So.2d 11, and Brown v. Tuskegee Light Power Co., 232 Ala. 361, 168 So. 159, which were suits against municipal corporations. Although estoppel is not often applied to a municipality, it may, in a proper case, be estopped."
280 Ala. at 467, 195 So.2d at 112. I do not disagree with either the rule of law or the ultimate holding in eitherAlford or City of Montgomery v. Weldon, because, in each case, the city had the authority to do what it did, but I do not believe the facts of this case, involving the furnishing of municipal services, are analogous to the facts in those two cases.
The City of Prattville has furnished fire protection to the police jurisdiction for 22 years. But does that mean it cannot stop furnishing that service if the cost of providing the service is not paid for by the license fees and taxes it is authorized to collect from the residents and businesses in the police jurisdiction? Must the residents of the municipality make up the difference? Those questions should be addressed by the Alabama Legislature, which can more appropriately handle a current problem that no doubt exists in many cities and their police jurisdictions, especially with the increase in crime and as the demands for city services increase. *Page 1169 
The answers to those policy questions seem especially inappropriate for a court, exercising its equity powers, to address.
In conclusion, let me say that I can find nothing in the statutory law of this State[3] or in the case law of this State that would require the residents of a municipality to pay for furnishing services to the police jurisdiction, unless the municipality has received compensation that fairly reflects the value of those services. I do not believe that the Legislature, in authorizing a municipality to collect in the police jurisdiction only one-half the license fees and sales tax that it can collect from its residents, intended for the residents of the municipality to be required to pay for municipal services in the police jurisdiction, if the amount of license fees and sales tax collected did not reasonably approximate the cost of furnishing those services.
Based on the foregoing, I cannot concur in affirming the judgment of the trial court, which used its equity powers and the doctrine of equitable estoppel to arrive at this result.
COOK, J., concurs.
[3] Section 11-51-91, Ala. Code 1975, permits municipalities to "fix and collect licenses for any business, trade or profession done within the police jurisdiction"; however, the amount of the license may not exceed one-half the amount charged for a license for similar businesses within the corporate limits. Municipalities may also collect sales tax in the police jurisdiction. Ala. Code 1975, §§ 11-51-200 through 11-51-207. Again, any sales tax levied in the police jurisdiction is limited to one-half the amount levied in the corporate limits.