694 So.2d 1256 (1996)
LAMAR ADVERTISING OF MONTGOMERY, INC., and Dyess Outdoor Advertising, Inc.
v.
STATE of Alabama DEPARTMENT OF TRANSPORTATION.
HEADRICK OUTDOOR ADVERTISING, INC.
v.
STATE of Alabama DEPARTMENT OF TRANSPORTATION.
1941386, 1941387 and 1941396.
Supreme Court of Alabama.
March 15, 1996.
Rehearing Denied April 18, 1997.
W. Joseph McCorkle, Jr., and Dorman Walker of Balch & Bingham, Montgomery, for appellants Lamar Advertising of Montgomery, Inc., and Dyess Outdoor Advertising, Inc.
Susan Russ Walker of Miller, Hamilton, Snider & Odom, Montgomery, for appellant Headrick Outdoor Advertising, Inc.
*1257 Jerry L. Weidler, counsel, Alabama Department of Transportation, Montgomery, for appellee.
RICHARD L. JONES, Retired Justice.
These three cases have been previously reviewed by this Court on separate appeals.[1] The trial court proceedings resulted in summary judgments favorable to the three sign companies. The trial court held that the Alabama Highway Department (now known as the Alabama Department of Transportation ("ALDOT")) was equitably estopped from claiming that signs erected between March 1983 and November 1988 in reliance on permits issued by the City of Montgomery were illegal under the the provisions of Ala. Code 1975, § 23-1-270 et seq.the Alabama Highway Beautification ActOutdoor Advertising ("AHBA").
On appeal from these three initial actions, this Court held:
"[ALDOT] cannot be estopped from raising the illegality of the signs or from claiming that they were illegally erected under the State Act. However, the issue whether the signs were, in fact, erected and maintained in violation of the law, i.e., whether the term `business' in the State Act (`commercial, business or industrial activities') is broad enough to encompass an agricultural area, is for the trial court to determine."
State Highway Department v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202, 1205 (Ala.1992) (emphasis in original).
Further, this Court reversed the judgments for the sign companies and remanded the causes for:
"[1] a determination of whether the signs at issue were illegally erected in a statutorily prohibited area and therefore must be removed; and, [2] if so, a determination of whether [the sign company] is entitled to just compensation for the removal of the signs; and, [3] if so, a determination of the amount that would justly compensate [the sign company for] their removal."
Id.
On remand, the trial court reversed its earlier rulings and determined that the signs had been illegally erected contrary to the prohibitions specified in the AHBA.
We quote the relevant language of the trial court's judgment order on remand, from which these three appeals are taken:
"The Circuit Court entered a summary judgment in favor of each of the defendants, Lamar Advertising of Montgomery, Inc. (`Lamar'), Headrick Outdoor Advertising, Inc. (`Headrick'), and Dyess Outdoor Advertising, Inc. (`Dyess'), on the ground that the plaintiff, Alabama Department of Transportation (`ALDOT') was estopped from contending that the signs at issue are illegal. ALDOT appealed from those judgments. The Supreme Court of Alabama reversed and remanded each of these cases to the circuit court for a determination whether the billboards were illegally erected and maintained and must be removed, and, if so, whether ALDOT is required to pay just compensation to the defendants.
"The court having heard ALDOT's motions for summary judgment, ... and having heard cross-motions for summary judgment filed by Lamar, Headrick, and Dyess, the court finds that the following material facts are undisputed:
"A. DEFENDANT LAMAR'S SIGNS
"Each of the nine signs at issue owned by Lamar was erected and is maintained by Lamar in an adjacent area abutting an interstate highway. Only one of the signs owned by Lamar is in a business area.
"Notwithstanding the requirements of the Alabama Highway Beautification Act Outdoor Advertising (Ala.Code 1975, §§ 23-1-271 through -288) (`AHBA'), and Article IX of the City of Montgomery's Ordinance No. 31-73, the City of Montgomery issued building permits to Lamar for the erection of the six outdoor advertising signs identified in Counts I, II, III, *1258 VII, VIII, and IX [of the complaint] on land zoned `agriculture.'
"The City of Montgomery's Board of Adjustment approved a variance for the erection of the billboard identified in Count IV on property zoned `residential.' Subsequently, Lamar erected a billboard on the residential property.
"Lamar erected the sign identified in Count VI of the complaint on land zoned `planned unit development' (`PUD'). Ordinance No. 31-73 construes a PUD to be a `Residence Zone.' Commercial and industrial uses are prohibited by § 2 of Article VII of the Ordinance unless they are `specifically permitted by the Planning Commission when granting final approval of PUD.' The record does not show that the City of Montgomery Planning Commission specifically permitted commercial or industrial uses when it granted final approval of the PUD district.
"The sign identified in Count XI of the complaint was erected on land zoned `M-1' for light industry. However, it is within 300 feet of another sign structure. Article IX, § 3(c)(3)(a), of Ordinance No. 31-73 provides that `[o]n all interstate highways and freeways and/or primary highways there must be at least 300 feet between sign structures on the same side of the highway.' The application for the building permit states that the sign is 310 feet from the nearest sign.
B. [There was no paragraph B in the trial court's order.]
"C. DEFENDANT HEADRICK'S SIGNS
"The City of Montgomery issued building permits to Lockridge Sales and Marketing Company, Inc. (`Lockridge'), for the erection of two billboards on land zoned `agriculture.' Lockridge erected the two signs, which Headrick purchased from Lockridge.
"D. DEFENDANT DYESS'S SIGNS
"The City of Montgomery issued building permits to Dyess for the erection of two outdoor advertising signs on land zoned `agriculture' in an adjacent area abutting Interstate 65. Dyess erected the two signs in 1988.
"CONCLUSIONS OF LAW
"1. With some exceptions not applicable to these cases, § (1)(c)(4) of Article IX of Ordinance No. 31-73 prohibits the erection and maintenance of billboards in areas adjacent to interstate and primary highways after the effective date of the Ordinance except for those to be erected in areas zoned commercial, industrial, or business. The uses permitted in Agricultural Areas are not commensurate with uses permitted in zoned Business Areas, Industrial Districts, Office Districts, or Institutional Districts.[2] [(Emphasis in original.]
"2. Apparently, to comply with Ala. Code 1975, § 23-1-273,[3] Article VII of *1259 Ordinance No. 31-73 allows the erection of billboards in areas zoned for agriculture only if the billboards `do not violate interstate highway, federal-aid primary highway, and state highway setback provisions.' All of defendants' billboards, except for the one owned by defendant Lamar that is on land zoned `M-1,' violate that provision since § 23-1-273 has a setback provision that forbids all billboards in adjacent areas along interstate highways unless the adjacent area is a business area. All of the signs at issue that are located in adjacent areas zoned for agricultural use are situated within 660 feet of the nearest edge of an interstate highway; therefore, they have been illegally erected and maintained."
"3. Section 3(c)(3)(a) of Ordinance No. 31-73 provides that `on all interstate highways... there must be at least 300 feet between all sign structures on the same side of the highway.' The billboard owned by Lamar and located in the industrial area zoned `M-1' for light industry violated the City's Ordinance because it is less than 300 feet from another sign. Furthermore, that sign violates Ala.Code 1975, § 23-1-274(3)(c)(1), which provides, in part, that `[o]n interstate highways ... there must be at least 500 feet between sign structures on the same side of the highway.'
"4. Article I of Ordinance No. 31-73 classifies a PUD as a `Residence Zone.' Billboards in residence zones are forbidden by § 23-1-273 and by Ordinance No. 31-73; therefore, the sign owned by Lamar that is in a PUD is illegal.
"5. As a matter of sovereignty, the City of Montgomery can not permit that which is forbidden by state law. All of the billboards at issue in these consolidated cases are prohibited by and were erected in violation of AHBA.
"6. Since the defendants' billboards were unlawfully erected after February 10, 1972, they are not conforming billboards. Ala.Code 1975, § 23-1-279(a). Therefore, ALDOT is not required to pay just compensation pursuant to § 23-1-280.
"....
"THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:
"1. Defendant Lamar's billboards in Counts I, II, III, IV, VI, VII, VIII, IX, and XI of the complaint, as amended, in CV-89-1810, were illegally erected;
"2. Defendant Headrick's billboards in Counts I and II of the complaint, as amended, in CV-89-2127, were illegally erected;
"3. Defendant Dyess's billboards in Counts I and II of the complaint, as amended, in CV-89-2128, were illegally erected;
"4. Because defendants' billboards were illegally erected after February 10, 1972, they are nonconforming billboards, and ALDOT is not required to pay just compensation to defendants;
"5. Defendants shall remove each of the illegal billboards within 30 days after the date of this order; and
"6. The motions for summary judgment filed by defendants Lamar, Headrick, and Dyess are denied."
Arguing that "agriculture" is a "business," the defendant sign companies contend that the term "business area," as defined by the AHBA, is broad enough to cover "agriculture." The trial court rejected this contention, holding that "[t]he uses permitted in Agricultural Areas are not commensurate with uses permitted in zoned Business Areas, Industrial Districts, Office Districts, or Institutional Districts." Surely, no citation of authority is required to support this conclusory proposition.
Finding no error in the judgment appealed from, we adopt that portion of the judgment quoted hereinabove as part of the opinion of this Court.
This opinion was prepared by retired Justice RICHARD L. JONES, sitting as a Justice *1260 of this Court pursuant to § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
HOOPER, C.J., and SHORES, COOK, and BUTTS, JJ., concur.
MADDOX and HOUSTON, JJ., concur specially.
HOUSTON, Justice (concurring specially).
The problem presented in these cases centers around the proper construction of Ala. Code 1975, § 23-1-273(5), which is part of the Alabama Highway Beautification Act, § 23-1-270 et seq. The pertinent portion of § 23-1-273 states:
"No sign shall ... be erected or maintained in an adjacent area after February 10, 1972, ... except the following:
"(5) ... [S]igns to be erected in business areas subsequent to February 10, 1972, which when erected, will comply with the provisions of Section 23-1-274...."
(Emphasis added.) The first portion of § 23-1-271(1) of the Alabama Highway Beautification Act defines the term "business area" to mean "[a]ny part of an adjacent area which is at any time zoned for business, industrial or commercial activities under the authority of any law of this state." Subsection (4) of § 23-1-271 defines "adjacent area" as "[a]n area which is adjacent to and within 660 feet of the nearest edge of the right-of-way of any interstate or primary highway."
The signs in question were erected after February 10, 1972, and were erected in areas zoned "agricultural" by local zoning authorities. The issue on appeal is whether, for purposes of applying § 23-1-273(5), part of the Alabama Highway Beautification Act, the phrase "area ... zoned for business ... activities,"[4] appearing in the statutory definition of "business area," was intended to include within the scope of its meaning areas zoned for agricultural use.
"The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute." Clark v. Houston County Comm'n, 507 So.2d 902, 903 (Ala.1987). "If possible, the intent of the legislature should be gathered from the language of the statute itself." Clark, 507 So.2d at 903. "[W]here the language of a statute is clear and unambiguous and the meaning obvious, there is no room for construction, [and] the court will confine itself to the language as it is and not invade the legislative realm by imposing ... a ... different meaning." Department of Industrial Relations v. Little Mfg. Co., 253 Ala. 416, 418, 44 So.2d 587, 589 (1950).
I have my doubts as to whether one can glean a plain meaning from the phrase "area... zoned for business ... activities." The zoning ordinances in question, while they create "commercial" zoning districts and "industrial" zoning districts, do not use the term "business" to describe any of the types of zones created under those ordinances. The petitioners correctly point out that the line between business activities and agricultural activities, if it ever truly existed, is continually being ever more blurred by the modern growth of agribusiness. Furthermore, the definition of the term "business" is very broad. For example, "business" is defined by Black's Law Dictionary (6th ed. 1990), as "employment, occupation, profession, or commercial activity engaged in for gain or livelihood. Activity or enterprise for gain, benefit, advantage or livelihood." It is possible to make a very good argument that agriculture could come within the commonly understood meaning of the term "business activity."
But even if the phrase "area ... zoned for business ... activities" is ambiguous, I am forced to agree with the majority's conclusion that agriculturally zoned areas were not intended to be included within the meaning of the phrase in question in the context of interpreting § 23-1-273(5), part of the Alabama Highway Beautification Act. It has long been established that when faced with a statute of "doubtful interpretation" this Court "will place upon the statute that construction which is reasonable and just." Ex parte *1261 Alabama Public Service Comm'n, 268 Ala. 322, 328, 106 So.2d 158, 163 (1958). After considering the Alabama Highway Beautification Act as a whole, and especially the legislature's findings set out in that Act (see § 23-1-272), I am convinced that the construction the majority has given the phrase "area ... zoned for business ... activities" is the only reasonable construction that can be given the phrase in this context.
The Alabama Highway Beautification Act was clearly intended to reduce the prevalence of outdoor advertising, especially in the more rural and scenic portions of our state. It resulted from an obvious attempt to balance the economic interests of businesses seeking to advertise and the outdoor advertising businesses that help to meet those advertising needs against the aesthetic and safety interests of Alabama's citizens and those who visit Alabama. In § 23-1-272 the legislature set forth its findings, acknowledging in subsection (1) that "outdoor advertising is a legitimate commercial use of private property adjacent to roads and highways" and in subsection (3) that "outdoor advertising is an integral part of the business and marketing function ... and should be allowed to operate in business areas," while at the same time recognizing in subsection (2) that outdoor advertising "should be regulated in order to protect the public investment in ... highways, to promote the recreational value of public travel, to preserve natural beauty and to promote the reasonable, orderly and effective display of such signs." (Emphasis added.) By restricting outdoor advertising principally to commercially developed and more urban areas of our state, the legislature struck an almost perfect compromise that benefits both advertisers and those interested in preserving Alabama's natural beauty.[5]
Outdoor advertising is obviously most effective in more congested areas where a greater number of motorists pass daily and where lower speed limits and intermittent stop lights enable those motoristswho, as consumers, are the persons at whom the signs are directedto notice billboards much more easily than on high-speed stretches of highway in undeveloped areas. At the same time, the addition of such signs to already commercially developed areas does not affect the natural beauty the legislature was intending to protect. The addition of outdoor advertising to agriculturally zoned areas would clearly run counter to the purposes behind the enactment of the Alabama Highway Beautification Act, and counter to the regulatory scheme created by that Act.
MADDOX, J., concurs.
NOTES
[1] State Highway Department v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202 (Ala.1992); State Highway Department v. Lamar Advertising of Montgomery, Inc., 594 So.2d 1205 (Ala.1992); State Highway Department v. Dyess Outdoor Advertising, Inc., 594 So.2d 1207 (Ala.1992).
[2] The AHBA also makes this distinction. Ala. Code 1975, § 23-1-271 provides:

"For the purposes of this division, unless otherwise indicated, the following terms shall have the meanings respectively ascribed to them by this section:
"(1) Business area. Any part of an adjacent area which is at any time zoned for business, industrial or commercial activities under the authority of any law of this state or not zoned, but which constitutes an unzoned commercial or industrial area as defined in this section.
"....
"(10) An unzoned commercial, business or industrial area. The land occupied by the regularly used building, parking lot, storage or processing area of a commercial, business or industrial activity, and the land within 600 feet thereof on each side of the highway....
"(11) Commercial or industrial activities for purposes of unzoned industrial and commercial areas. Those activities generally recognized as commercial or industrial by local zoning authorities in this state, except that none of the following activities shall be considered commercial or industrial.
"a. Outdoor advertising structures;
"b. Agricultural, forestry, ranching, grazing, farming and similar activities, including but not limited to, wayside fresh produce stands...."
(Emphasis supplied.)
[3] Section 23-1-273 provides, in pertinent part, as follows:

"No sign shall, subject to the provisions of Section 23-1-274 ["Erection or maintenance of signsControls; criteria"], be erected or maintained in an adjacent area after February 10, 1972...." [Footnote continued.]
Section 23-1-271(4) defines "adjacent area":
"An area which is adjacent to and within 660 feet of the nearest edge of the right-of-way of any interstate or primary highway, which 660 feet distance shall be measured horizontally along a line normal or perpendicular to the centerline of the highway."
[4] No one argues that areas zoned for "agriculture" should be considered as areas "zoned for... industrial or commercial activities"; therefore, I will discuss only whether the term "area... zoned for business ... activities" includes within its meaning an area zoned for agriculture.
[5] This intent is clear from looking at the Act as a whole, especially considering the method in which the legislature sought to regulate outdoor advertising in rural areas not yet zoned. Such signs can be placed only in those areas on "land occupied by the regularly used building, parking lot, storage or processing area of a commercial, business or industrial activity." Ala.Code 1975, § 23-1-271(10). See Hawley Fuel Corp. v. Burgess Mining & Construction Corp., 291 Ala. 546, 548, 283 So.2d 603, 605 (1973) ("When construing a statute this court must look to the context, spirit, and the whole, to reach the true intent of the legislature.").